JAMISI J. CALLAWAY COCK NO. P97743
Name and Prisoner/Booking Number

CHCF- STOCKTON C3A/113
Place of Confinement

7707 S. AUSTIN ROAD
Mailing Address

STOCKTON, CA. 95213
City, State, Zip Code

**FILED**

SEP 29 2021

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMISI JERMAINE CALLAWAY                  )
(Full Name of Plaintiff)      Plaintiff,    )
                                          )
                v.                        )    CASE NO. 1:21-CV-01450-BAM^(PC)
                                          )           (To be supplied by the Clerk)
(1) Chief Medical EXECUTIVE, A. Youssef   )
(Full Name of Defendant)                  )
(2) Chief medical EXECUTIVE, S. Davenport )
                                          )    CIVIL RIGHTS COMPLAINT
(3) Chief Medical officer B. Lopez        )        BY A PRISONER
                                          )
(4) Chief medical officer M.A. Felder     )    ☒ Original Complaint
                      Defendant(s).       )    ☐ First Amended Complaint
☑ Check if there are additional Defendants and attach page 1-A listing them. )    ☐ Second Amended Complaint

## A. JURISDICTION        RECEIVED

SEP 29 2021

1.   This Court has jurisdiction over this action pursuant to:
     ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
     ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

     ☒ Other: AMERICAN WITH DISABILITY ACT AND 504 OF THE REHABILITATION
ACT OF 1973 AND THE ARMSTRONG Remedial PLAN (ADA) AND (ARP) 42 U.S.C.
12101 (A)(A)(1)(2), 42 U.S.C. 12102, 42 U.S.C. 12132, AND 42 U.S.C. 12203 (b)(1)(2)(3).
2.   Institution/city where violation occurred: WASCO STATE PRISON / KERN VALLEY STATE PRISON

CONTINUED DEFENDANT(S):

(5) Chief PHYSICIAN AND SURGEON, M. SPAETH

(6) Chief PHYSICIAN AND SURGEON, N. IGBINOSA

(7) PSYCHIATRIST, H. AZIZI

(8) MEDICAL DOCTOR, I. PATEL

(9) REGISTER NURSE, DOE BARTULABA

(10) REGISTER NURSE, DOE GIWA

(11) REGISTER NURSE, DOE JESUS

(12) WARDEN, C. PFIFFER

(13) Chief DEPUTY WARDEN, S. SWAIM

(14) ASSOCIATE WARDEN - ADA, J. CASTRO

(15) APPEAL ANALYST, A. MEJIA

(16) CARE COMPLIANCE ANALYST, B. KEMP

(17) HEALTH CARE GRIEVANCE COORDINATOR, S. SEXDA

(18) CORRECTIONAL officer, DOE RUEA

(19) CORRECTIONAL officer, M. CUEVAS

(20) CORRECTIONAL officer, A. VILA

(21) CORRECTIONAL officer, J. TANAKA

(22) CORRECTIONAL officer, DOE LOPEZ

(23) CORRECTIONAL CAPTAIN, W. HAMMER

(24) CORRECTIONAL LIEUTENANT B. WILSON

(25) CORRECTIONAL SERGEANT, M. MARTINEZ

(26) CORRECTIONAL officer, DOE SLATER

(27) CORRECTIONAL officer, B. BETANCOURT

(28) CORRECTIONAL officer, D.A. LOPEZ

(29) CORRECTIONAL SERGEANT, I. ROSALES

(30) CORRECTIONAL officer J. VALDEZ

1-A

CONTINUED DEFENDANT(S);

(31) CORRECTIONAL OFFICER, B. RIOS

(32) CORRECTIONAL OFFICER, A. VARGAS

(33) CORRECTIONAL OFFICER, F. JIMENEZ

(34) CHIEF DEPUTY WARDEN, S. SMITH

(35) CHIEF PSYCHIATRIST, Y. KAO

(36) CHIEF PSYCHIATRIST, D. RIAK

(37) PSYCHOLOGIST, A. AHLMEYER

(38) PSYCHOLOGIST, H. DIAZ

(39) PSYCHOLOGIST, T. LOAK

(40) PSYCHOLOGIST, H. SMRZYNSKI

(41) DAVITA HEALTHCARE, INC.

(42) NEPHROLOGIST VAKANADI R. UMAMAHESWARA

(43) REGISTER NURSE NICOLE GOMEZ

(44) TECHNICIAN ROBER FINCH

(45) TECHNICIAN LOUIS FONSECA

(46) TECHNICIAN ASHANTE DOE

(47) CHIEF MEDICAL EXECUTIVE M.A. FELDER

(48) CORRECTIONAL OFFICER, DOE CELDON

1-B

## B. DEFENDANTS

1. Name of first Defendant: _A. Youssee_. The first Defendant is employed as:
   _Chief Medical Executive_ at _Wasco State Prison_.
   (Position and Title)                              (Institution)

2. Name of second Defendant: _S. Davenport_. The second Defendant is employed as:
   _Chief Medical Executive_ at _Kern Valley State Prison_.
   (Position and Title)                              (Institution)

3. Name of third Defendant: _S. Lopez_. The third Defendant is employed as:
   _Chief Medical Officer_ at _Kern Valley State Prison_.
   (Position and Title)                              (Institution)

4. Name of fourth Defendant: _M.A. Felder_. The fourth Defendant is employed as:
   _Chief Medical Officer_ at _Kern Valley State Prison_.
   (Position and Title)                              (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☒ Yes    ☐ No

2. If yes, how many lawsuits have you filed? _11_. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _Samuel J. Callaway_ v. _Contra Costa County, et al.,_
      2. Court and case number: _C-01-2689-SAB_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Yes, Yes And NO_

   b. Second prior lawsuit:
      1. Parties: _Samuel J. Callaway_ v. _Scribner, et al.,_
      2. Court and case number: _1-05-CV-01234-BAM_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Yes, No And NO: Case was settled in Settlement_

   c. Third prior lawsuit:
      1. Parties: _Samuel J. Callaway_ v. _M. Veal, et al.,_
      2. Court and case number: _2-09-CV-02907-GEB-EFB_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Yes, No And NO: Case was settled in Settlement_

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

5. NAME of fifth Defendant: M. SPAETH. The fifth Defendant IS employed AS: Chief PHYSICIAN AND SURGEON AT KERN VALLEY STATE PRISON.

6. NAME of SIXTH Defendant: N. IGBINOSA. The SIXTH Defendant IS employed AS: Chief PHYSICIAN AND SURGEON AT KERN VALLEY STATE PRISON.

7. NAME of SEVENTH Defendant: H. AZIZI. The SEVENTH Defendant IS employed AS: PSYCHIATRIST AT KERN VALLEY STATE PRISON.

8. NAME of eighth Defendant: I. PATEL. The eighth Defendant IS employed AS: Medical Doctor AT KERN VALLEY STATE PRISON.

9. NAME of NINTH Defendant: Doe BAKTULABA. The NINTH Defendant IS employed AS: REGISTER NURSE AT KERN VALLEY STATE PRISON.

10. NAME of TENTH Defendant: Doe GIWA. The TENTH Defendant IS employed AS: REGISTER NURSE AT KERN VALLEY STATE PRISON.

11. NAME of ELEVENTH Defendant: Doe JESUS. The ELEVENTH Defendant IS employed AS: REGISTER NURSE AT KERN VALLEY STATE PRISON.

12. NAME of TWELFTH Defendant: C. PFIFFER. The TWELFTH Defendant IS employed AS: WARDEN AT KERN VALLEY STATE PRISON.

13. NAME of THIRTEENTH Defendant: S. SWAIM. The THIRTEENTH Defendant is employed AS: Chief Deputy WARDEN AT Kern VALLEY STATE PRISON.

14. NAME of FOURTEENTH Defendant: J. CASTRO. The FOURTEENTH Defendant is employed AS: ASSOCIATE WARDEN-ADA AT KERN VALLEY STATE PRISON.

15. NAME of FIFTEENTH Defendant: A. MEJIA. The FIFTEENTH Defendant is employed AS: APPEAL ANALYST AT Kern VALLEY STATE PRISON.

16. NAME of SIXTEENTH Defendant: B. KEMP. The SIXTEENTH Defendant is employed AS: CARE Compliance ANALYST AT KERN VALLEY STATE PRISON.

17. NAME of SEVENTEENTH Defendant: S. SECDA. The SEVENTEENTH Defendant is employed AS: HEALTH CARE GRIEVANCE COORDINATOR AT KERN VALLEY STATE PRISON.

18. NAME of EIGHTEENTH Defendant: DOE PUGA. The EIGHTEENTH Defendant is employed AS: CORRECTIONAL officer AT KERN VALLEY STATE PRISON.

19. NAME of NINETEENTH Defendant: M. CUEVAS. The NINETEENTH Defendant is employed AS: CORRECTIONAL officer AT KERN VALLEY STATE PRISON.

20. NAME of TWENTIETH Defendant:   A. VILA. THE TWENTIETH Defendant IS employed AS: Correctional officer AT Kern Valley STATE Prison.

21. NAME of THE twentiefirst Defendant: J. TANZKA. The TWENTIEfirst Defendant is employed AS: Correctional officer AT Kern Valley STATE prison.

22. NAME of the twentie second Defendant: Doe lopez. The Twentie second Defendant is employed AS: Correctional officer AT Kern Valley STATE prison.

23. NAME of twentie Third Defendant: W. Hammer. The Twentie Third Defendant is employed AS: Correctional CAPTAIN AT Kern Valley STATE prison.

24. NAME of twentie fourth Defendant: B. Wilson. The twentie fourth Defendant is employed AS: Correctional LIEUTENANT AT Kern Valley STATE prison.

25. NAME of the twentie fifth Defendant: M. MARTINEZ. The Twentie fifth Defendant is employed AS: Correctional Sergeant At Kern Valley STATE prison.

26. NAME of twentie SIX Defendant: Doe Slater. The twentie SIX Defendant is employed AS: Correctional officer AT Kern Valley STATE prison.

2-c

27. NAME OF THE TWENTIESEVENTH Defendant : B. BETANCOURT.
The TWENTIESEVENTH Defendant is Employed AS :
CORRECTIONAL officer AT Kern VALLey STATE PRISON.

28. NAME OF TWENTIEIGHTH Defendant : D.A. Lopez.
The TWENTIEIGHTH Defendant is Employed AS :
CORRECTIONAL officer AT Kern VALLey STATE PRISON

29. NAME OF TWENTIENINTH Defendant : I. ROSALES.
The TWENTIENINTH Defendant is Employed AS :
CORRECTIONAL SERGEANT AT Kern VALLey STATE PRISON

30. NAME OF THIRTIETH Defendant : J. VALDEZ.
The THIRTIETH Defendant is Employed AS :
CORRECTIONAL officer AT Kern VALLey STATE PRISON.

31. NAME OF THIRTIEFIRST Defendant : B. RIOS.
The THIRTIEFIRST Defendant is Employed AS :
CORRECTIONAL officer AT Kern VALLey STATE PRISON.

32. NAME OF THIRTIESecond Defendant : A. VARGAS.
The THIRTIESecond Defendant is Employed AS :
CORRECTIONAL officer AT Kern VALLey STATE PRISON.

33. NAME OF THIRTIETHird Defendant : F. JIMENEZ.
The THIRTIETHird Defendant is Employed AS :
CORRECTIONAL officer AT Kern VALLey STATE PRISON.

2-D

34. NAME OF THIRTIEFOURTH Defendant: S. Smith.
The THIRTIEFOURTH Defendant is employed as:
Chief Deputy Warden at Kern Valley State prison.

35. NAME OF THIRTIEFIFTH Defendant: Y. RAO.
The THIRTIEFIFTH Defendant is employed as:
Chief Psychiatrist at Kern Valley State prison.

36. NAME OF THIRTIESIX Defendant: D. Piak.
The THIRTIESIX Defendant is employed as:
Chief Psychiatrist at Kern Valley State prison.

37. NAME OF THIRTIESEVENTH Defendant: A. Ahlmeyer.
The THIRTIESEVENTH Defendant is employed as:
Psychologist At Kern Valley State prison.

38. NAME OF THIRTIEIGHTH Defendant: H. DIAZ.
The THIRTIEIGHTH Defendant is employed as:
Psychologist At Kern Valley State prison.

39. NAME OF THIRTIENINTH Defendant: T. LOAK.
The THIRTIENINTH Defendant is employed as:
Psychologist At Kern Valley State prison.

40. NAME OF FORTIETH Defendant: H. SMUZYNSKI.
The FORTIETH Defendant is employed as:
Psychologist At Kern Valley State prison.

2-E

41. NAME OF FICTIE FIRST Defendant: DAVITA HEALTHCARE, INC. The FICTIE FIRST Defendant is Employed AS: PRIVATE Contractor of CDCR/CCHCS WASCO STATE PRISON.

42. NAME OF FICTIE Second Defendant: VARANASI R. UMAMAHESWARA. The FICTIE Second Defendant is Employed AS: Sub Contractor of DAVITA HEALTHCARE, INC. AS A Nephrologist Medical Doctor AT WASCO STATE PRISON.

43. NAME OF FICTIE Third Defendant: Nicole Gomez. The FICTIE Third Defendant is Employed AS: Register Nurse of DAVITA HEALTHCARE, INC. AT WASCO STATE PRISON.

44. NAME OF FICTIE Fourth Defendant: Roger Finch. The FICTIE Fourth Defendant is Employed AS: TECHNICIAN OF DAVITA HEALTHCARE, INC. AT WASCO STATE PRISON.

45. NAME OF FICTIE fifth Defendant: Louis FONSECA. The FICTIE fifth Defendant is Employed AS: TECHNICIAN OF DAVITA HEALTHCARE, INC. AT WASCO STATE PRISON

46. NAME OF FICTIE SIX Defendant: ASHANTE DOE. The FICTIE SIX Defendant is Employed AS: TECHNICIAN OF DAVITA HEALTHCARE, INC. AT WASCO STATE PRISON.

2-F

47. NAME OF FORTIESEVENTH DEFENDANT: M.A. Felder. The FORTIESEVENTH Defendant is employed AS: Chief medical executive at Kern Valley State prison.

48. NAME OF FORTIEIGHTH DEFENDANT: DOE Calder. The FORTIEIGHTH Defendant is employed AS: Correctional officer AT Kern Valley State prison.

C. CONTINUED: PREVIOUS LAWSUITS

d. FOURTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. HOWARD, ET AL.,
2. COURT AND CASE NUMBER: 1:08-CV-01896-LJO-GSA
3. RESULT REACHED: YES, YES AND NO: TRIAL NOT-GUILTY

e. FIFTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. SCRIBNER, ET al.,
2. COURT AND CASE NUMBER: 1:11-CV-01090-LJO-SAB
3. RESULT REACHED: YES, YES AND NO

f. SIXTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. CDCR ET AL
2. COURT AND CASE NUMBER: 1:13-CV-00747-SAB
3. RESULT REACHED: YES, YES AND NO

g. SEVENTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. CDCR, ET al.,
2. COURT AND CASE NUMBER: 1:16-CV-01305-DAD-MJS
3. RESULT REACHED: YES, YES AND NO

h. EIGHTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. D. NIEVES, ET al.,
2. COURT AND CASE NUMBER: 2:19-CV-01792-CKD
3. RESULT REACHED: PENDING

C. CONTINUED: PREVIOUS LAWSUITS

I. NINTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. R. DAVIS, ET al.,
2. COURT AND CASE NUMBER: 4:19-CV-06758-JSW
3. RESULT REACHED: PENDING

J. TENTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. B. DUFFY, ET al.,
2. COURT AND CASE NUMBER: 2:16-CV-02532-WBS-DMC
3. RESULT REACHED: PENDING

K. ELEVENTH PRIOR LAWSUIT:
1. PARTIES: JAMISI J. CALLAWAY V. M. MARTEL, ET al,
2. COURT AND CASE NUMBER: 2:20-CV-1384-CKD
3. RESULT REACHED: PENDING

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: AMERICAN WITH DISAbility ACT AND 504 OF THE Rehabilitation Act of 1973 AND ARMSTRONG Remedial PLAN (ADA) AND (ARP) 42 U.S.C. 12101, 42 U.S.C. 12102, 42 U.S.C. 12132 AND 42 U.S.C. 12203

2. **Claim I.** Identify the issue involved. Check only one. State additional issues in separate claims.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☒ Other: DISAbility DISCRIMINATION

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Being PLAintiff HAS — physical AND Mental DISAbilities of 2nd STAGE? life Sustaining Renal DISEASE under Gone Hemodialysis And Depression HAving Suicidal Ideations on 3-12-19 when PLAintiff was Unlawfully Transported To WASCO STATE PRISON AND Returned To CHCF-Stockton Then Transported TO WASCO STATE PRISON AGAIN on 3-14-19 DISContinuing PLAintiff D.M.E'S. PLAintiff's life was Maliciously placed in imminent DANGER By Defendant Chief Medical Executive A. YOUSSEF, M.D. AT WASCO STATE PRISON when Since PLAintiff ARRIVAL He WAS DISCRIMINATED AGAINST HIS DISAbilities of HIS DPO chrono of A wheel chair, 90 DEGREE Knee Brace, And HIS prescription eye Glasses To SEE. PLAintiff WAS Also Denied HIS out-PATIENT Housing UNIT STATUS of Medical Housing AND The DISAbility DISCRIMINATION WAS PERSONAL TO Deprive PLAintiff of A Deprivation of A Constitutional Right under The AMERICAN with DISAbility Act AND 504 of The Rehabilitation Act of 1973 AND ARMSTRONG REMedial PLAN (ADA) AND (ARP) 42 U.S.C. 12101, 42 U.S.C. 12102, 42 U.S.C. 12132 AND 42 U.S.C. 12203 By HIS PERSONAL ACTIONS Depriving PLAintiff

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

PLAintiff Suffered A PERMANENT Clotted Access To HIS VEINS And Emotional Stress. Also PLAintiff Suffered Near DEATH From High Potassium AND Several HospiTAlizATions From Defendant PERSONAL ACTIONS AND INACTIONS To ACCommodate PLAintiff.

5. **Administrative Remedies:**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No

b. Did you submit a request for administrative relief on Claim I? ☒ Yes ☐ No

c. Did you appeal your request for relief on Claim I to the highest level? ☒ Yes ☐ No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

Due to His Disability of Hearing, Accommodations, Hemodialysis Health Services AND ETC. when plaintiff was Transferred to Kern Valley State prison on 4/10/19 A Non-Medical Designated out-patient Housing unit (OHU) THAT WAS NOT FACILITATED TO Properly House plaintiff IN (OHU) or Provide Plaintiff Equal Access of Health Services for His High Risk Serious Medical Needs AND Safety of Hemodialysis which Defendants(s) Warden C. Pfiffer & Doctor I. Patel personally Discriminated against plaintiff's Disabilities when they Housed Plaintiff at KVSP B-yard with a Chest Catheter in a Volatile Imminent Danger to Plaintiff Safety AND Welfare, Because all High Risk Dialysis patients was Transferred out when The Hemo-Dialysis Program Services was Discontinued at KVSP By The California Department of Corrections AND Rehabilitation. Plaintiff immediately Submitted Several CDCR 1824 Reasonable Accommodation Request to Defendants(s) Warden, C. Pfiffer AND Doctor, I. Patel Under The American with Disability Act AND 504 of The Rehabilitation Act of 1973 AND Armstrong Remedial plan (ADA) AND (ARP) 42 U.S.C. 12101, 42 U.S.C. 12102, 42 U.S.C. 12132, AND 42. U.S.C. 12203. Plaintiff was Maliciously Thwarted, Stonewalled, whitewashed, Obstructed AND Rebuffed By Defendants(s) Associate Warden-ADA, J. Gastelo, Chief Medical officer, S. Lopez, Chief Physician Surgeon, M. Spaeth, inmate appeals analyst, A. Mejia, Health Care Compliance analyst, B. Kemp, Health Care Grievance Coordinator, B. Breda, Senior Psychologist Supervisor, S. Ahlmeyer,

3-A

PERSONAL ACTIONS IN THEIR REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE AND THEIR PROHIBITION AGAINST RETALIATION AND COERCION. PLAINTIFF WAS LEFT TO DIE IN HIS CELL AT KVSP FOR WEEKS WHEN HE WAS DENIED EQUAL HEALTH SERVICES FOR HIS LIFE SUSTAINING HEMODIALYSIS OUT OF RETALIATION AS PLAINTIFF WAS MALICIOUSLY DISCRIMINATED AGAINST AS A INDIVIDUAL BECAUSE THE DEFENDANT(S) OPPOSED A ACT TO DENY PLAINTIFF HEALTH CARE SERVICES OF HEMODIALYSIS AND ADA TRANSPORTATION TO HEMODIALYSIS WITH AIR CONDITION IN THE VEHICLES AND BECAUSE PLAINTIFF MADE A CHARGE IN HIS CDCR 1824 REQUEST THE DEFENDANTS REFUSED AND DISREGARDED TO INVESTIGATE PLAINTIFF'S ACCOMMODATIONS BY THEIR INTERFERENCE, COERCION AND INTIMIDATION PROTECTED UNDER 42 U.S.C. 12203 (b)(1)(2)(3) WHEN DEFENDANT(S), WARDEN C. PFIFFER, MEDICAL DOCTOR, I. PATEL. ASSOCIATE WARDEN-ADA, J. CASTRO, CHIEF MEDICAL OFFICER, S. LOPEZ, CHIEF PHYSICIAN SURGEON, M. SPAETH, INMATE APPEALS ANALYST, A. MEJIA, HEALTH CARE COMPLIANCE ANALYST, B. KEMP, HEALTH CARE GRIEVANCE COORDINATOR, S. SEKDA, SENIOR PSYCHOLOGIST SUPERVISOR, S. AHLMEYER AND CHIEF EXECUTIVE OFFICER, S. DAVENPORT LEFT PLAINTIFF TO DIE IN HIS CELL WEEKS WITHOUT ON SITE DIALYSIS AT THEIR OWN SITE CDCR, FACILITIES WITH HOUSING AND TELLING PLAINTIFF HE WOULD DIE IF HE DON'T RETURN TO WASCO STATE PRISON. IF PLAINTIFF DON'T GIVE UP HIS RIGHT OF EQUAL TREATMENT OF ACCOMMODATIONS TO ON SITE DIALYSIS AND HOUSING FOR HIS HIGH RISK HEALTH CARE SERVICES AND ADA TRANSPORTATION S. PLAINTIFF SUFFERED PERSONAL

Physical AND Emotional Harm on 8/1/19 After Receiving a life Sustaining Access Through His Surgery That was Deliberate Maliciously Unwantedly Damaged on 8/28/19 From The Refusal to Accommodate Plaintiff High Risk Serious Medical needs And Safety From Restraints Cutting off The circulation of Blood Flow From The Authorization of Defendant(s) Warden C. Pfiffer AND Chief Medical Executive M.A. Felder Refusal to Accommedate ADA Trans- Portation & Health Care Services, Also Causing plaintiff Access to clott up Permanently By Their Discrimination Placing Plaintiff After Surgery in Restraints with Severe low Hypotension in over Heated Van(s) and Vehicle(s) with No Active Air Condition For prisoners which Caused plaintiff Hypotension to Dangerously Drop Large And His Access to clott off By Time He Arrived At His Dialysis Verified And Witnessed By Register Nurse "Iklean Finch" whom immediately Ordered Emergency Health services to Declott Access. Because Defendant, Medical Doctor, I. Patel Delay of Not Evaluating plaintiff's New Access From The time of His Discharge on 8/2/19 or As of The Date 9/10/19 Despite plaintiff's Continued Request For Reasonable Accommedations Addressing The Restraints & Transportation During Heat waves For (2) straight weeks And Never Addressing Plaintiff's low Hypotension AND Clotting Perma- Anently Damaging His life Sustaining Access.

3-C

DUE TO THE CONTINUED DISCRIMINATION OF EXCLUDING
PLAINTIFF FROM PARTICIPATION IN OUT-PATIENT HOUSING
(OHU) AND ON SITE HEMODIALYSIS TREATMENT AND
DENYING PLAINTIFF THE BENEFITS OF A PUBLIC ENTITY'S
SERVICES, PROGRAMS AND ACTIVITIES AND PLAINTIFF'S
DISCRIMINATION WAS BY REASON OF HIS life SUSTAINING
DISABILITIES FROM DIALYSIS AFTER DEFENDANT(S)
FRUSTRATED THE EFFECTIVENESS OF ADA-RELATED
GRIEVANCES BY THREATENING, COERCING AND INTIMI-
DATING PLAINTIFF INTO FOREGOING HIS RIGHTS TO
REQUEST REASONABLE ACCOMMODATIONS TO FILE ADA-
RELATED GRIEVANCES WHICH CONSTITUTES A DEPRIVATION
OF THE AMERICAN WITH DISABILITIES ACT AND 504 OF
THE REHABILITATION ACT OF 1973 AND THE ARMSTRONG
REMEDIAL PLAN (ADA AND (ARP), 42 U.S.C. 12101, 42 U.S.C.
12102, 42 U.S.C. 12132 AND 42 U.S.C. 12203 CAUSING
EVEN FURTHER HARM ON 9/18/19, 9/20/19 AND 10/9/19
WHEN DEFENDANT REGISTER NURSE, DOE BARTULABA REFUSED
INTENTIONALLY TO ACCOMMODATE PLAINTIFF'S HIGH RISK
SERIOUS MEDICAL NEEDS AND SAFETY AFTER PLAINTIFF
PERSONALLY INFORMED DEFENDANT REGISTER NURSE, DOE
BARTULABA THAT HE COULDN'T BREATH IN THE
TRANSPORTATION VEHICLES #125 AND #BIO. NO
ARRANGEMENTS FOR ADA TRANSPORTATION OR BY
AMBULANCE WAS PROVIDED AND EACH TIME DEFENDANT
REGISTER NURSE, DOE BARTULABA LET CUSTODY
OVER RIDE HER AUTHORITY WHEN DEFENDANT(S)
CORRECTIONAL OFFICER, DOE RUEA, CORRECTIONAL OFFICER,
M. CUEVAS, CORRECTIONAL OFFICER, A. VILA,
CORRECTIONAL OFFICER, J. TAVERA, CORRECTIONAL OFFICER,

3-D

Doe Lopez and Correctional officer, Doe Celdon each time interfered with Plaintiff medical life sustaining needs and safety when they informed Defendant Register Nurse, Doe Tsaktulaba that he refused Dialysis which was not the case and despite Plaintiff complaints of severe chest pain Plaintiff was sent to his cell each time without treatment by Defendant(s) Register Nurse, Doe. Bartulaba, Register Nurse, Doe Biwa and Register Nurse, Doe Jesus who threaten Plaintiff with Death to Please custody at (KVSP) as Plaintiff suffered severe chest pain and shortness of Breathing for months and months Declining. Due to the staff culture that condones staff mental and Physical abuse by the Defendants in violation of American with Disabilities Act and 504 of the Rehabilitation Act of 1973 and Armstrong Remedial Plan (ADA and (ARP), 42 U.S.C. 12101, 42 U.S.C. 12102, 42 U.S.C. 12132 and 42 U.S.C. 12203, Davita Health- care, Inc. and its staff Nephrologist Varanasi Umamaheswara, and Register Nurse, Nicole Gomez deliberately Discriminated against Plaintiff's Disabilities of severe low blood pressure, Trans- portation, Health Services and preventing Plaintiff access from Clothes off when they refused to Reschedule Plaintiff treatment to the Meaningful Accommodation Plaintiff's 1824 Request to stop transporting him in the Afternoon during the heat wave in the Summer which was Torture and caused Plaintiff life sustaining Access to Cloth off on 8/29/19 Permanently when they did nothing.

3-2

## CLAIM II

1.  State the constitutional or other federal civil right that was violated: Deprivation of Plaintiffs First, Eighth And Fourteenth Amendment Constitutional Rights.

2.  **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☒ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

After plaintiff was injured falling in his cell due to his severe low hypertension and high risk for falling from his dialysis hemodialysis needs and defendants wardens C. Pfiffer, chief executive officer, M.A. Felder and medical doctor, I. Patel direct deliberate refusal to protect plaintiff high risk serious medical needs, safety and welfare without delay from removing plaintiff severe right shoulder rotator cuff damages and tears for over 7 months after returning from a off-site hospital and discharged under the care of medical doctor, I. Patel. Plaintiff serious medical needs, safety and welfare was delayed by medical doctor, I. Patel personally when he ignored plaintiff's off-site discharge orders pointing out possible tear to plaintiff right shoulder rotator cuff after falling in his cell. Despite plaintiff requested x-ray and a MRI for almost a year that was thwarted and undermined of defendant, medical doctor, I. Patel delay to follow up with plaintiff treatment needs for therapy or to further diagnose plaintiff severe pain stopping plaintiff

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff injuries to his rotator cuff; there is a full-thickness tear affecting both the supraspinatus and infraspinatus tendon with retraction to the level of the glenohumeral joint. There is atrophy of both the supraspinatus and infraspinatus muscles. There is partial tear of the subscapularis contribution to the rotator cuff.

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Claim II?    ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Claim II to the highest level?    ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

From Receiving Adequate sleep For years. Defendant(s) Warden C. Pfiffer, Chief Executive officer, M.A. Felder and Medical Doctor, I. Patel Delayed plaintiff X-rays and MRI leaving plaintiff in severe pain which was a Direct Deprivation to Deprive plaintiff of His Eighth Amendment constitutional Right to Be Free From Cruel and unusual punishment and Deliberate indifference to plaintiffs serious High Risk medical needs, safety and welfare. Because Their Direct personal Delay To Treat Plaintiff or Refer plaintiff to a specialist For The Damage to plaintiffs Right shoulder immediately For His shoulder & joint pain For years Delaying plaintiff's process to Heal and causing irreparable Further Harm and injuries. Defendant(s) Warden C. Pfiffer, Chief Executive officer, M.A. Felder and medical Doctor, I. Patel Have medical indifference plaintiff serious medical needs, Safety and welfare of Plaintiffs Right shoulder Rotator Cuff Tears since May 7, 2019 Through 2021 which plaintiff still Has suffered unbearable severe pain and sleep Deprivation. On 1/28/20 after Filing a Direct Health care Grievance For a second time Against Defendant Medical Doctor, I. Patel He Had custody escort plaintiff to B-Yard clinic which plaintiff was Personal ambushed By Defendant medical

DOCTOR, I. PATEL IN DIRECT RETALIATORY REPRISAL OF PLAINTIFF HEALTH CARE GRIEVANCES SINCE HIS ARRIVAL ON 4/10/19 AS HE ATTACKED PLAINTIFF VERBALLY MAKING DISCRIMINATORY RACIAL DEROGATORY STATE-MENTS WHICH WAS A DEPRIVATION TO DEPRIVE PLAINTIFF OF HIS FIRST AMENDMENT CONSTITUTIONAL RIGHT TO BE FREE TO REDRESS PENDING GRIEVANCES OF THE AMERICANS WITH DISABILITIES ACT AND 504 REHABILITATION ACT OF 1973 AND ARMSTRONG REMEDIAL PLAN (ADA AND (AKP), 42 U.S.C. 12101, 42 U.S.C. 12102, 42 U.S.C. 12132 AND 42 U.S.C. 12203 AND CRUEL & UNUSUAL PUNISHMENT AND DELIBERATE INDIFFERENCE TO DELAY PLAINTIFF'S HIGH RISK SERIOUS MEDICAL NEEDS, SAFETY AND WELFARE TO PROTECT PLAINTIFF'S EQUAL PROTECTION TO ACCESS HEALTH CARE SERVICES TO BE TREATED FROM HIS SEVERE INJURIES TO HIS RIGHT SHOULDER ROTATOR CUFF TEARS - DEFENDANT MEDICAL DOCTOR, I. PATEL BECAME IN-RAGED AFTER PLAINTIFF POINTED OUT HIS DELAY TO TREAT HIS SERIOUS MEDICAL NEEDS STATING TO PLAINTIFF TO GET HIS "BLACK ASS" OUT HIS MEDICAL CLINIC AND THAT HE DO NOT FUCKING WON'T TO SEE HIM. REFUSING PLAINTIFF SERIOUS MEDICAL NEEDS AS CUSTODY WITNESSED HIS CONDUCT AND DID NOTHING TO PROTECT PLAINTIFF FROM THE VERBAL ATTACK TO INCITE VIOLENCE AND RACIAL DISCRIMINATION. DEFENDANT(S) WARDEN C. PFIFFER AND CHIEF EXECUTIVE OFFICER, M.A. FELDER BOTH DID NO

INVESTIGATION OR INTERVIEWED Custody officers
J. Anderson or J. Perez who personally witnessed
Defendant Medical Doctor, I. Patel Misconduct
AND IN Response STATING Defendant(s) WARDEN
C. Pfiffer, Chief Physician Surgeon N. Igbinosa,
AND Chief Executive officer Responded THAT with
Respect to one or more of The issue Grieved,
It HAS Been Concluded THAT STAFF Did not Violate
California Department of Corrections AND
Rehabilitation policy, IN Their Response to
undermined plaintiff Right To Redress Grievances
Without Retaliation plaintiff Serious Medical
Needs, Safety AND Welfare FURTHER Delayed
Plaintiff's Diagnosis AND Treatment Dated
July 15, 2020 Through 2021 present Date.

4-C

## CLAIM III

1. State the constitutional or other federal civil right that was violated: Deprivation of Plaintiff's First, Eighth and Fourteenth Amendment Constitutional Rights

2. **Claim III.** Identify the issue involved. Check only one. State additional issues in separate claims.

☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care

☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☒ Retaliation

☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

On 5/20/20 of Plaintiff Right to Redress his Grievances of The Continued Americans with Disabilities Act and 504 of The Rehabilitation Act of 1973 and Armstrong Remedial Plan (ADA) and (ARP) of 42 U.S.C. 12101, 42 U.S.C. 12102, 42 U.S.C. 12132 and 42 U.S.C. 12203 Cruel & unusual Punishment and Deliberate indifference of Plaintiff High Risk Serious Medical Needs, Safety and Welfare. Plaintiff was Maliciously Sadictly Retaliated, Use of Excessive Force and Subjected to Cruel and unusual Punishment and Deprivation to Deprive Plaintiff Equal Protection. Plaintiff was in Direct Compliance of CDCR Policies and Procedure of Title 15 Section 3005. (a)(b) on 5/20/20 when Plaintiff Found Defendant Technician Louis Fonseca Davita Health Care, Inc. Employee A Private Contractor with CDCR/CCHCS Identification Prison Card Placed in Plaintiff Dressing Supplies. Plaintiff immediately once Discovering the lost or misplace Identification Prison Card He informed his Building officer in The Tower whom instructed Plaintiff

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Plaintiff Suffered A Mental and Physical Break Down Attempting (3) Suicides Hospitalization From Near Death, Unconsciousness, Severe lost of Blood Bleeding From Rectum and Grave Hypertension and Injuries to Right Shoulder of A Torn Rotator Cuff and Subjecting Plaintiff to Covid-19 Contact.

5. **Administrative Remedies.**

  a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes ☐ No

  b. Did you submit a request for administrative relief on Claim III?     ☒ Yes ☐ No

  c. Did you appeal your request for relief on Claim III to the highest level?     ☒ Yes ☐ No

  d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

_____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

5

to TURN over DEFENDANT, TECHNICIAN LOUIS FONSECA
PRISON CARD IDENTIFICATION TO DEFENDANT(S)
CORRECTIONAL OFFICER, B. BETANCOURT AND CORRECTIONAL
OFFICER, DOE SLATER. THE NEXT DAY on 5/21/20
PLAINTIFF WAS ESCORTED TO B-YARD PROGRAM
AND PLACED IN A HOLDING CELL CAGE AND LEFT IN
RESTRAINTS FOR HOURS CUFFED BEHIND HIS BACK
AND DENIED HIS ADA/ARP ACCOMMODATION AND
MEDICAL CHRONO TO USE WAIST RESTRAINTS only,
DUE TO PLAINTIFF DAMAGES TO BOTH ARMS
FROM CLOTTED ACCESSES BEING INJURED. AND
NO ACCESSABILITY TO SIT DOWN WAS offered TO
PLAINTIFF AND WHEN HE COMPLAINED TO CUSTODY
HE WAS ORDERED TO "STOP BITCHING AND TO SHUT
THE FUCK UP BEFORE THEY BEAT PLAINTIFF'S ASS."
DUE TO PLAINTIFF BEING RETALIATED AGAINST
AND THE INTERFERENCE, COERCION AND THREATENING
INTIMIDATION TO USE EXCESSIVE FORCE AND
VIOLENCE IN DISCRIMINATION OF PLAINTIFF DIS-
ABILITIES PLAINTIFF WAS MALICIOUSLY SADICTEDLY
PLACED ON AD-SEG STATUS BY DEFENDANT(S)
CORRECTIONAL SERGEANT, M. MARTINEZ, CORRECTIONAL
LIEUTENANT, B. WILSON, CORRECTIONAL CAPTAIN,
CORRECTIONAL OFFICER, B. BETANCOURT AND CORRECTIONAL
OFFICER, DOE SLATER. PLAINTIFF WAS SERVED A
114-D lock-up ORDER THEN ISSUED A FABRICATED 1-15
RVR RULE VIOLATION REPORT THAT PLAINTIFF
FURNISHED EQUIPMENT FOR AN ESCAPE AND

5-A

Also Stated Plaintiff was in possession of escape paraphernalia when all plaintiff did was returned what was placed in his supplies intentional out of retaliation and reprisals. Even though Plaintiff personal made Defendant Warden C. Pfiffer aware of his officers Retaliatory conduct He still Directly Denied plaintiff the Chain of Command 114-D lock up review within 24 hours and I.C.C. Review within (10) Days of the next I.C.C. Review. Defendant(s) Correctional officer, B. Betancort, Correctional Sergeant M. Martinez Correctional Lieutenant, B. Wilson, Correctional Captain, W. Hammer, Clinical psychologist, H. Diaz, and Davita Healthcare, Inc. Luis Fonseca Direct lies Caused plaintiff to have a Complete mental and physical Break Down causing plaintiff Suicidal Ideations on 5/21/20 in which Due to the 114-D lock up order and their Direct RVR 1-15 Reports plaintiff was willing to Kill himself by uncapping his Catheter. Plaintiff was placed immediately in the Mental Health crisis Bed (MHCB) on 5/21/20 By a Jane Doe Psychologist. Yet on 5/22/20 Plaintiff was Maliciously Sadisticly Denied Suicidal precuation when plaintiff was Deliberately, thwarted, Stonewalled, Whitewashed, Obstructed and Rebuffed By Defendant(s) Chief Psychiatrist, Y. Rao, chief psychiatrist,

5-B

D. PILAK, PSYCHOLOGIST, H. DIAZ, PSYCHOLOGIST, T. LOAK AND PSYCHOLOGIST, H. SMUZYNSKI MEDICAL DOCTORS AT PLAINTIFF TREATMENT TEAM MEETING which each Defendant personally informed Plaintiff He was not suicidal until He tried to kill Himself AND there was nothing they could Do until He Attempted suicide. Plaintiff was Denied suicidal precaution By the Discharged orders of Defendant(S) Chief psychiatrist, Y. RAO, Chief psychiatrist, D. PILAK, psychologist, H. DIAZ, psychologist, T. LOAK AND psychologist, H. SMUZYNSKI within less then 24 Hours of Being Admitted into the Mental HEALTH crisis Bed (MHCB) By A license Medical Doctor, Psychiatrist / psychologist. Plaintiff was wrongfully Discharged in violation of the CDCR, Suicidal precaution when plaintiff was Discharged to A.S.U. #1 For Furnishing Equipment For An escape which plaintiff Did The Right Thing By turning in the identification AND plaintiff Also told His treatment team Defendant(S) Chief psychiatrist, Y. RAO, Chief psychiatrist, D. PILAK, psychologist, H. DIAZ, psychologist, T. LOAK AND psychologist, H. SMUZYNSKI He would kill Himself By uncapping His Catheter Central line Caps if He was placed in A.S.U. #1 or AD-Seg Housing unit

For Following CCR Title 15 Section 3005. Conduct (a)(b) By Turning in Their Co-workers Identification Prison Card that was Davita Healthcare, Inc., Technician, Louis Fonseca Job to Keep on His Person Per CCR Title 15 Section 3414. Identification, "Not Plaintiff Responsibility". Plaintiff was immediately Transported to Dialysis to Wasco State Prison leaving Part of His DME's at the (MHCB) at Cell #112, 1 Knee Sleeve, 1 Knee Brace, 1 Walker, Nelyan Black Carry Bag with (2) Typing Wheels (4) Clear Tec Typing Ribbon and (4) Correctable Clear Tec Correctional Tape. Plaintiff informed Davita Healthcare, Inc. and its Staff, Register Nurse Nicole Gomez, Technician, Roger Finch and Technician, Ashante Doe when He Go Back to (KVSP) And He is Discharge From the Crisis Bed He Will uncap His Catheter Central line Caps to Kill Himself. Both Defendant(s) Chief Psychiatrist, Y.Kao, Chief Psychiatrist, D.Pilar, Psychologist, H.Diaz, Psychologist, T.Loak, Psychologist, H. Smuzynski, Davita Healthcare, Inc. and its Staff Register Nurse, Nicole Gomez, Technician Roger Finch and Technician, Ashante Doe Personal Did nothing to Provide Suicidal Precaution and to Follow CDCR Policies Set in Place For Suicidal Precaution. Plaintiff was Transported Back to Kern Valley State Prison From Wasco State Prison By Defendant(s) Correctional

5-D

officer, D.A. Lopez AND Correctional officer, M. Cuevas when Plaintiff personally informed Both officers of His Suicidal Ideations to UNCAP His life Sustaining Catheter central line Caps when He is Discharged to A.S.U. or AD-SEG Housing which upon Arrival Defendants Correctional officer, D.A. Lopez AND Correctional officer, M. Cuevas informed Plaintiff He would Not Return to His (MHCB) Housing #112 AND That it Was Above Their Pay Grade to Report Plaintiff Suicidal Ideations to Defendant(s) WARDEN C. Pfiffer AND Chief Medical officer M.A. Felder. Plaintiff was Taking to Receiving AND Release (R&R) to Be Stripped out AND left in A Holding Cage when plaintiff UNCAPPED Both lines to His central Catheter to His main Artery Connected inside His Heart Bleeding out within In Seconds Covering The Holding Cell Floor with Blood, Taking A Response team over (10) Minutes To Respond leaving Plaintiff IN Imminent Danger Before Stopping The Bleeding By Clapping off His central line CAPS AND Not Securing Them AND Escorting Plaintiff to The Emergency Room were Nothing Was Done AND Plaintiff was Denied Suicidal Precaution. He was Placed in A Holding Cell under The Direct Supervision of Defendant(s) Correctional officer, D.A. Lopez AND Correctional officer, M. Cuevas who

5-2

watched Plaintiff uncap his Central line Catheter again Bleeding out within seconds covering the Cage Floor and outside the Cage Floor with Blood Taking a response medical Team over 3-5 minutes to respond to take Plaintiff Back to the Emergency Room still not placing Plaintiff in Four Point Restraints to prevent his suicide Attempts to end his life. Even After the Second suicide Attempt By Plaintiff to end his life Plaintiff was never Admitted Back into the Crisis Bed For suicidal Pre-cuation to prevent Risk to self By Defendant Psychiatrist, H. Azizi ———————

who released Plaintiff to AD-seg, 1 on 1 watch cell. with no Bright lights on to visually watch Plaintiff, No suicide Blanket or mattress to sleep or lay on. Immediately Plaintiff life was placed in imminent Danger of self Harm when under Direct supervision Plaintiff uncapped his central line Catheter caps for a Third Time causing the cell Floor with his Blood Bleeding out AND Deficating on Himself until He was unconscious laying in his own Blood And Feces For Almost Thirty Minutes. Plaintiff was placed in AD-seg Housing Unit To Die By Defendant Psychiatrist H. Azizi To Direct Attempt to Allow self Homicide Attempt By suicide when Plaintiff was

5-F

Sadictly Denied Admition into The Crisis Bed
And Denied Suicide Precuation And not
immediatly Transferred into The Mental Health
Crisis Bed (MHCB) Causing The near Death of
Self Mutilation. After thirty Minutes of Plaintiff
layne in His own Blood And Feces The Alarm
was Activated And Plaintiff was left Bleeding
in His Cell on The Floor unconscious not Respond-
ing To orders For Almost Twenty More Minutes
until He was physically Cell-extracted
By Defendants(s) Correctional Sergeant I. Rosales,
Correctional officer, J. Valdez, Correctional officer,
R. Rios, Correctional officer, A. Vargas, Correctional
officer F. Jimenez who Violated CDCR Policy, Respect
To one or More of The issues Graved when They used
unnecessary excessive Force as They Failed
To video Record The Cell-extraction And The use
Force when They Attacked Plaintiff Then Dragged
Plaintiff From His Severe torn Rotator Cuff injury
Further injuring And Damaging A PReAssistant
injury Hospitalization Plaintiff For Severe lost
of Blood, Bleeding From Rectom, low Hypotension
And chest Pain From 5/23/20 Through 5/28/20
Returning with Suicidal Ideations To Kern Valley
State Prison TTA And Admitted immediately To
The Mental Health Crisis Bed (MHCB) For
Suicidal Precuation of Self Harm And AD-Seg
Housing in The Correctional Treatment Center (CTC).

S-6

Due to plaintiff Right to Redress Grievances Against the Retaliatory Reprisals taking Against Him for turning in a Identification prison card of Defendant Technician, Luis Fonseca plaintiff was intentionally ostracize by each named Defendant's by each of their personal Direct involvement with plaintiff Deprivation to Deprive Him of His First, Eighth and Fourteenth Amendment Constitutional Rights, when Plaintiff was Retaliated Against for Grievancing, Placed on AD-Seg which was cruel and unusual punishment and Deliberate indifference to plaintiff serious high Risk Mental Health Needs, Safety and Welfare Deny Plaintiff Suicidal Precaution which was a Equal Protection under the Fourteenth Amendment to be protected by the Defendants. Instead on 6/09/20 After the Numerous Violations a VITEK Hearing was Carried out to Silence plaintiff out of Retaliation of Redressing His Right to Grieve About plaintiff Being intentionally Denied Health Services for Mental Health and the Deliberate Attempted Murder by Advance Suicide Attempt on 5/22/20. Plaintiff was Maliciously, Sadistly, and intentionally Deprived His Due Process Rights under CCR Title 15 Sections 3999.202 Informed Consent to Treatment (a), 3999.203 Capacity For Informed Consent, 3999.342 Placement in a Department of State Hospitals, Hospital (a)(1)(2)(3)(4)(5)(b)(c), Penal Code 2684 and

5-H

VITEK V. JONES (1980), 455 U.S. 480, 100 S. CT. 1254.
THE INTENTIONALLY ACT OF RETALIATORY REPRISALS AGAINST
PLAINTIFF TO DEPRIVE HIM OF A CONSTITUTIONAL RIGHT
OF A FAIR HEARING WAS MALICIOUSLY, SADISTLY AND
INTENTIONALLY CARRIED OUT TO CAUSE FURTHER INJURIES
AND HARM TO PLAINTIFF MENTAL HEALTH AND TO
KEEP PLAINTIFF FROM PARTICIPATING AND PREPARING
IN HIS DEFENSE TO REFUSE CONSENT, BY CALLING WITNESSES
TO REFUTE DEFENDANTS CHIEF PSYCHIATRIST, Y. KAO
CHIEF PSYCHIATRIST, D. PILAK, PSYCHOLOGIST T. LOAR,
PSYCHOLOGIST, H. DIAZ, PSYCHOLOGIST H. SMUZYNSKI,
WARDEN C. PFEFFER AND CCI HERNANDEZ REASONS
FOR FAILURE TO RAISE PLAINTIFF LEVEL OF CARE FROM
CCCMS TO AN LEVEL OF IN-PATIENT PSYCH TREATMENT
AND RETURN TO THE DEPARTMENT OF STATE HOSPITAL
(DSH) WAS NOT BEING BASED ON A MENTAL DIAGNOSIS
FOR TREATMENT NOR MEDICATION OR A COURT ORDER OF
KEYHEA V. RUSHEN. IN THE ILLEGAL VITEK HEARING
IN THE DEFENDANTS NOTES OR REPORTS DID
THEY GIVE IN THEIR REASON FOR THEIR "DECISIONS"
AND "EVIDENCE" RELIED UPON IN MAKING THEIR DECISION
ANY PERTINENT MATERIAL ADMISSIBLE EVIDENCE TO
SUPPORT WAIVING PLAINTIFF'S RIGHT TO CONSENT,
DEPRIVING PLAINTIFF A RIGHT TO REFUSE. ONLY
STATING IN THEIR DECISION THAT THEY AGREED THAT
PLAINTIFF WOULD BENEFIT FROM IN-PATIENT PSYCH
TREATMENT AND TRANSFER TO DEPARTMENT
STATE HOSPITALS (DSH).

5-I

Not only wasn't Plaintiff Admitted or Transferred to Department State Hospital (DSH) For In-Patient Psych Treatment on 6/18/20 Plaintiff was Transfer to CHCF-Stockton A Non-licensed In-Patient Psych Department State Hospital (DSH) For Almost Thirty Days From 6/18/20 Through 7/27/20 until. Plaintiff was Transferred Temporary Out-Patient Housing Unit (OHU) as A Temp Medical Hold Due to Covid-19 After Kern Valley State Prison Admitted Him wrongfully placing Him in AD-SEG, Releasing Plaintiff Immediately AND Finding Plaintiff NOT Guilty of RVR 1-15 of Possession of Escape Paraphervalia Dis-Missing The Fabricated Rule Violation which Set The Direct Retaliation AND injuries To Plaintiff Physical & Mental Health serious needs Safety AND Welfare Causing Cruel AND Unusual Punish-Ment AND Equal Protection of Due Process of A Vitek Hearing in Motion AND Subjecting Plaintiff High Risk Serious Health to Covid-19 As He Came in Contact With Several Covid-19 Patients That Died From The Deadly Virus. If Defendant DAVITA Health Care, Inc. AND Their Employee Technician, Louis Fonseca would Have Told The truth AND Notified to Help custody Fabricate A RVR 1-15 None of This would Have Happen to Plaintiff in Claim III At All.

5-J

## E. REQUEST FOR RELIEF

State the relief you are seeking:

Full Relief in individual AND official CAPACITY in MONTEREY AND PUNITIVE Compensation For $1,000,000.00 EACH Defendant AND Request For Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ 5/21/2021 _____
                          DATE

_____ James J. Callover _____
                          SIGNATURE OF PLAINTIFF

N/A
_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

N/A
_____
(Signature of attorney, if any)

_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

6

1  PRISON LAW OFFICE
   DONALD SPECTER – 83925
2  REBEKAH EVENSON – 207825
   CORENE KENDRICK – 226642
3  PENNY GODBOLD – 226925
   1917 Fifth Street
4  Berkeley, California  94710
   Telephone: (510) 280-2621
5  Email: revenson@prisonlaw.com

6  DISABILITY RIGHTS EDUCATION &
   DEFENSE FUND, INC.
7  LINDA KILB – 136101
   2212 Sixth Street
8  Berkeley, California  94710
   Telephone:  (510) 644-2555

9
   ROSEN, BIEN & GALVAN, LLP
10 MICHAEL W. BIEN – 96891
   GAY C. GRUNFELD – 121944
11 315 Montgomery Street, Tenth Floor
   San Francisco, California  94104-1823
12 Telephone:  (415) 433-6830

13 Attorneys for Plaintiffs

14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16
                          OAKLAND DIVISION
17

18
   JOHN ARMSTRONG, *et al.*,          Case No. C94 2307 CW
19
        Plaintiffs,                   [PROPOSED] ORDER MODIFYING
20                                    JANUARY 18, 2007 INJUNCTION
   v.
21
   EDMUND G. BROWN JR. *et al.*,
22
        Defendants.
23

24

25

26

27

28

1      For the reasons set forth in this Court's Orders of August 22, 2012 (ECF No. 2180) and

2  December 5, 2014 (ECF No. 2462), IT IS HEREBY ORDERED that the following shall be substituted

3  in place of page seven, lines five through twelve of the January 18, 2007 Injunction (ECF No. 1045):

4      Defendants, their agents and employees shall promptly take all reasonable steps to comply with

5  each provision set forth below:

6      A. Tracking of All Allegations of Staff Member Non-Compliance

7      1. Defendants, their agents and employees (Defendants) shall track any allegation that any

8  employee of the Department of Corrections and Rehabilitation was responsible for any member of the

9  Plaintiff class not receiving access to services, programs, activities, accommodations or assistive

10  devices required by any of the following: the Armstrong Remedial Plan, the Americans with

11  Disabilities Act or this Court's prior orders. Allegations to be tracked include, but are not limited to,

12  those received from CDCR staff, prisoners, Plaintiffs' counsel, administrative appeals and third parties.

13  All such allegations shall be tracked, even if the non-compliance was unintentional, unavoidable, done

14  without malice, done by an unidentified actor or subsequently remedied.

15      2. The allegations shall be tracked in an electronic spreadsheet that can be searched and sorted.

16  The spreadsheet shall contain at least the following information: the prison at which the incident

17  occurred, the name and CDCR number of the prisoner, the date of the allegation, the name of the

18  employee(s), the date the investigation was initiated, the name and title of the investigator, the date the

19  investigation was completed, the result of the investigation, the number of prior allegations of non-

20  compliance against the employee(s), and the action taken, if any, as a result of the investigation,

21  including whether the incident was referred to the Office of Internal Affairs.

22      3. The spreadsheet shall be produced to Plaintiffs' counsel in electronic format monthly. When

23  the spreadsheet is produced to Plaintiffs' counsel, the employees' names shall be removed and shall be

24  replaced with a unique identifier. When redacting employees' names in records produced to Plaintiffs

25  in accordance with this Order, Defendants shall consistently identify an individual employee by the

26  same unique identifier.

27

28

B. Investigations

1. Defendants shall investigate all allegations of employee non-compliance, regardless of whether the allegation includes the name of the employee(s). Investigations shall be initiated within ten business days of receiving notice of such allegations and shall be completed as promptly as possible. Investigations must include a review of all information necessary to determine whether or not the allegation is true and shall include an interview with the affected prisoner(s). The investigation must result in a written report that shall list all sources of information relied upon in deciding whether employee non-compliance occurred and whether any other finding(s) of non-compliance against the employee(s) has been sustained.

2. If Plaintiffs' counsel has a good faith disagreement with the result of a particular investigation, they may request a copy of the written report and it shall be produced. In such instances, Plaintiffs' counsel shall have the right to review all written documents utilized in making the determination set forth in the report. Upon a showing of need, Plaintiffs' counsel shall also have the right to interview individuals who provided information utilized in making this determination.

3. When producing documents to Plaintiffs' counsel pursuant to this section, Defendants shall replace employees' names with unique identifiers as described in paragraph A.3.

C. Corrective Action and Discipline

1. Whenever an investigation reveals employee noncompliance, Defendants must comply with procedures set forth in Defendants' November 21, 2008 memorandum, "Expectations for Staff Accountability and Non-Compliance of the Disability Placement Program."

2. Defendants shall determine whether to initiate disciplinary proceedings or corrective action against an employee found in non-compliance, depending upon the number of prior violations, the seriousness of the harm to the prisoner, and the culpability of the employee. Defendants shall discipline employees in compliance with the Employee Disciplinary Matrix set forth in the CDCR Departmental Operations Manual, Chapter 3, Article 22, Personnel, Training, and Employee Relations.

3. All determinations of whether to initiate disciplinary proceedings or corrective action shall be produced to Plaintiffs' counsel upon request. When producing these documents to Plaintiffs'

1 counsel, Defendants shall replace employees' names with unique identifiers as described in paragraph
2 A.3.

3      D. Dispute Resolution

4      1. In the event of a dispute about the production of information, the results of Defendants'
5 investigation of alleged non-compliance or their decision about whether to initiate corrective action,
6 Plaintiffs' counsel shall provide notice to Defendants and attempt to resolve the matter through
7 negotiation. Defendants must respond to this notice within ten business days.

8      2. If the parties are unable to resolve the dispute informally, Plaintiffs' counsel may request that
9 the Court's expert review and resolve the matter. Depending on the nature of the dispute, the Court's
10 expert shall resolve disputes about the production of information, determine whether non-compliance
11 occurred or, if it did, whether corrective action should be initiated. When requesting review by the
12 Court's expert, Plaintiffs' counsel shall substantiate their contentions with sworn declarations from the
13 class member or members involved, signed under penalty of perjury. Defendants shall produce all
14 documents requested by the Court's expert and shall make all employees available for interview, on a
15 confidential or nonconfidential basis as determined by the Court's expert. Administrative
16 recommendations made by the Court's expert pursuant to this section shall be reviewable by this Court
17 on a motion by any party dissatisfied with the expert's decision. The review shall be conducted
18 pursuant to the requirements of 28 U.S.C. § 636(b)(1)(C), the procedure for the review of a report and
19 recommendation by a magistrate judge.

20      3. The parties dispute whether certain incidents set forth in the pleadings constitute non-
21 compliance with the Remedial Order. Plaintiffs' counsel shall inform Defendants which incidents
22 remain in dispute and shall attempt to resolve these disputes through negotiation with Defendants. If
23 negotiations fail, the disputes may be referred to the Court's expert pursuant to paragraph D.2., above.

24      E. Protective Order

25      The parties shall negotiate an order to protect the state law rights of Defendants' employees
26 from unnecessary disclosure of personnel information. All documents that contain personnel
27 information produced to Plaintiffs' counsel and the Court's expert pursuant to this Order shall be

28

1  covered by this protective order. If the parties are unable to agree on the terms of a protective order, the

2  Court's expert will recommend one.

3      F. Notice

4      Defendants shall provide a copy of this Order to the present and future individual employees

5  who occupy the following positions within the California Department of Corrections and

6  Rehabilitations:

7      a. the Undersecretaries of the CDCR,

8      b. the Director of the Division of Adult Institutions,

9      c. the Deputy Directors of the Division of Adult Institutions,

10      d. the Associate Directors of the Division of Adult Institutions,

11      e. all Wardens of adult institutions, and

12      f. all adult institution ADA coordinators.

13      G. Miscellaneous

14      The procedures set forth in this order or in the 2007 Injunction shall not apply to staff working

15  under the authority of the Receiver appointed by the court in Plata v. Brown.

16

17  **IT IS SO ORDERED.**

18  Dated:  12/29/2014

19                                    CLAUDIA WILKEN
                                  United States District Judge

20

21

22

23

24

25

26

27

28

## *42 USCS § 12101*

Current through Public Law 117-21, approved June 30, 2021, excepting Public Law 117-2.

*United States Code Service > TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 161) >*
*CHAPTER 126. EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES (§§ 12101 — 12213)*

## § 12101. Findings and purpose

**(a) Findings.** The Congress finds that—

**(1)** physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

**(2)** historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

**(3)** discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

**(4)** unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

**(5)** individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

**(6)** census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

**(7)** the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

**(8)** the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

**(b) Purpose.** It is the purpose of this Act—

**(1)** to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

**(2)** to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

**(3)** to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

**(4)** to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

## History

**HISTORY:**

Act July 26, 1990, *P. L. 101-336*, § 2, *104 Stat. 328*; Sept. 25, 2008, *P. L. 110-325*, § 3, *122 Stat. 3554*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

## *42 USCS § 12102, Part 1 of 2*

Current through Public Law 117-21, approved June 30, 2021, excepting Public Law 117-2.

*United States Code Service > TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 161) > CHAPTER 126. EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES (§§ 12101 — 12213)*

## § 12102. Definition of disability

As used in this Act:

(1)Disability. The term "disability" means, with respect to an individual—

(A)a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B)a record of such an impairment; or

(C)being regarded as having such an impairment (as described in paragraph (3)).

(2)Major life activities.

(A)In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B)Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3)Regarded as having such an impairment. For purposes of paragraph (1)(C):

(A)An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B)Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

(4)Rules of construction regarding the definition of disability. The definition of "disability" in paragraph (1) shall be construed in accordance with the following:

(A)The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.

(B)The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

(C)An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

(D)An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

(E)

(i)The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as—

(I)medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

(II)use of assistive technology;

(III)reasonable accommodations or auxiliary aids or services; or

(IV)learned behavioral or adaptive neurological modifications.

(ii)The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

(iii)As used in this subparagraph—

(I)the term "ordinary eyeglasses or contact lenses" means lenses that are intended to fully correct visual acuity or eliminate refractive error; and

(II)the term "low-vision devices" means devices that magnify, enhance, or otherwise augment a visual image.

## History

**HISTORY:**

Act July 26, 1990, *P. L. 101-336*, § 3, *104 Stat. 329*; Sept. 25, 2008, *P. L. 110-325*, § 4(a), *122 Stat. 3555*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

End of Document

## *42 USCS § 12132*

Current through Public Law 117-21, approved June 30, 2021, excepting Public Law 117-2.

*United States Code Service > TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 161) >*
*CHAPTER 126. EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES (§§ 12101 — 12213) >*
*PUBLIC SERVICES (§§ 12131 — 12165) > PROHIBITION AGAINST DISCRIMINATION AND OTHER*
*GENERALLY APPLICABLE PROVISIONS (§§ 12131 — 12134)*

## § 12132. Discrimination

Subject to the provisions of this title, no qualified individual with a disability shall, by reason of
such disability, be excluded from participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subjected to discrimination by any such entity.

## History

**HISTORY:**

Act July 26, 1990, *P. L. 101-336*, Title II, Subtitle A, § 202, *104 Stat. 337*.

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM) All rights reserved.

**End of Document**

## *42 USCS § 12203*

Current through Public Law 117-21, approved June 30, 2021, excepting Public Law 117-2.

*United States Code Service  >  TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 161)  >  CHAPTER 126. EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES (§§ 12101 — 12213)  >  MISCELLANEOUS PROVISIONS (§§ 12201 — 12213)*

## § 12203. Prohibition against retaliation and coercion

**(a) Retaliation.** No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

**(b) Interference, coercion, or intimidation.** It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

**(c) Remedies and procedures.** The remedies and procedures available under sections 107, 203, and 308 of this Act [42 USCS §§ 12117, 12133, 12188] shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III [42 USCS §§ 12111 et seq., 12131 et seq., 12181 et seq.], respectively.

## History

**HISTORY:**

Act July 26, 1990, *P. L. 101-336*, Title V, § 503, *104 Stat. 370.*

United States Code Service
Copyright © 2021 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved. All rights reserved.

**End of Document**

# PROOF OF SERVICE BY MAIL
## [CCP §§ 1013(a), 2015.5]

STATE OF CALIFORNIA, COUNTY OF ~San Joaquin~

I am a citizen of the County of ~San Joaquin~, State of California. I am a citizen of the United States of America.  I am over the age of eighteen (18) and not a party to this action.  I am a resident of the County of San Joaquin, CDCR# ~F27743~

My address is:

California Health Care Facility

~7707 S. Austin Road~

Stockton, CA 95215

On ~September 27~, 2021,  I served via United States Mail a copy of the following document(s):

The above-noted legal document(s) was placed in a sealed envelope, with postage thereon fully prepaid, addressed to the person at the address indicated below pursuant to California Code of Civil Procedure Section 1013.  I placed the envelope or package in a mailbox or other like facility addressed to:

~United States District Court~
~Eastern District of California~
~Office of the Clerk, USDC~
~2500 Tulare Street, Suite~
~Fresno, CA. 93721~

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This document was executed on ~Sept 27~, 2021  in San Joaquin County, California.

~James J. Callaway~
Type or Print Name

~James J. Callaway~
Signature