1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT

9
### EASTERN DISTRICT OF CALIFORNIA

10

11  JAMISI JERMAINE CALLOWAY,                 Case No.  1:21-cv-01450-JLT-BAM (PC)

12              Plaintiff,                    FINDINGS AND RECOMMENDATIONS
                                              REGARDING DISMISSAL OF CERTAIN
13        v.                                  CLAIMS AND DEFENDANTS

14  YOUSSEE, *et al.*,                        (ECF No. 17)

15              Defendants.                   **FOURTEEN (14) DAY DEADLINE**

16

17        Plaintiff Jamisi Jermaine Calloway ("Plaintiff") is a state prisoner proceeding *pro se* in

18  this civil rights action under 42 U.S.C. § 1983.  Plaintiff's first amended complaint is currently

19  before the Court for screening.  (ECF No. 17.)

20  **I.      Screening Requirement and Standard**

21        The Court is required to screen complaints brought by prisoners seeking relief against a

22  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

23  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

24  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

25  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

26        A complaint must contain "a short and plain statement of the claim showing that the

27  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

28  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

2  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

3  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

4  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

5          To survive screening, Plaintiff's claims must be facially plausible, which requires

6  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

7  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

8  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

9  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

10  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

11  **II.      Plaintiff's Allegations**

12          Plaintiff is currently housed at California Health Care Facility ("CHCF") in Stockton,

13  California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at

14  Wasco State Prison ("WSP") in Wasco, California and at Kern Valley State Prison ("KVSP") in

15  Delano, California.  Plaintiff names the following defendants: (1) California Department of

16  Corrections and Rehabilitation/California Corrections Health Care Services ("CDCR/CCHCS");

17  (2) A. Youssee, Chief Medical Executive, WSP; (3) S. Davenport, Chief Medical Executive,

18  KVSP; (4) S. Lopez, Chief Medical Executive, KVSP; (5) M. A. Felder, Chief Medical

19  Executive, KVSP; (6) N. Igbinosa, Chief Physician and Surgeon, KVSP; (7) M. Spaeth, Chief

20  Physician and Surgeon, KVSP; (8) Y. Rao, Chief Psychiatrist, KVSP; (9) D. Pilar, Chief

21  Psychiatrist, KVSP; (10) S. Swaim, Chief Deputy Warden, KVSP; (11) S. Smith, Chief Deputy

22  Warden, KVSP; (12) C. Pfiffer, Warden, KVSP; (13) J. Castro, Associate Warden-ADA, KVSP;

23  (14) I. Patel, Medical Doctor, KVSP; (15) H. Azizi, Psychiatrist, KVSP; (16) A. Ahlmeyer,

24  Psychologist, KVSP; (17) H. Diaz, Psychologist, KVSP; (18) T. Loar, Psychologist, KVSP;

25  (19) H. Smuzynski, Psychologist, KVSP; (20) Giwa, Register Nurse, KVSP; (21) Jesus, Register

26  Nurse, KVSP; (22) Bartulaba, Register Nurse, KVSP; (23) A. Mejia, Appeal Analyst, KVSP;

27  (24) B. Kemp, Care Compliance Analyst, KVSP; (25) S. Serda, Health Care Grievance

28  Coordinator, KVSP; (26) Puga, Correctional Officer, KVSP; (27) Lopez, Correctional Officer,

1   KVSP; (28) Slater, Correctional Officer, KVSP; (29) Celdon, Correctional Officer, KVSP;

2   (30) M. Cuevas, Correctional Officer, KVSP; (31) A. Vila, Correctional Officer, KVSP; (32) J.

3   Tavera, Correctional Officer, KVSP; (33) B. Betancourt, Correctional Officer, KVSP; (34) J.

4   Valdez, Correctional Officer, KVSP; (35) D. A. Lopez, Correctional Officer, KVSP; (36) B. Rios,

5   Correctional Officer, KVSP; (37) A. Vargas, Correctional Officer, KVSP; (38) F. Jimenez,

6   Correctional Officer, KVSP; (39) M. Martinez, Correctional Sergeant, KVSP; (40) I. Rosales,

7   Correctional Sergeant, KVSP; (41) B. Wilson, Correctional Lieutenant, KVSP; (42) W. Hammer,

8   Correctional Captain, KVSP; (43) DaVita Healthcare Inc., WSP; (44) R. Umamaheswara,

9   Medical Doctor, Nephrologist at DaVita Healthcare Inc., WSP; (45) Nicole Gomez, Register

10  Nurse at DaVita Healthcare, Inc., WSP; (46) Roger Finch, Technician at DaVita Healthcare, Inc.,

11  WSP; (47) Louis Fonseca, Technician at DaVita Healthcare, Inc., WSP; and (48) Does 1–100,

12  Correctional Officers and/or Medical Personnel employed at WSP and KVSP in 3/14/2019

13  through 6/18/2020.  Plaintiff sues all defendants in their individual capacities.  The Court

14  summarizes Plaintiff's allegations as follows:

15          Claim One

16          Plaintiff was diagnosed with renal disease in 1989, started hemodialysis for renal failure

17  in 1999, and in 2012 was diagnosed with severe low blood pressure from psychotropic

18  medications.  Around 3/12/2019 through 6/18/2020, while under the custody of Defendant CDCR

19  and CCHCS at WSP and KVSP, Defendants A. Youssee, S. Davenport, S. Lopez, M. A. Felder,

20  N. Igbinosa, M. Spaeth, Y. Rao, D. Pilar, S. Swaim, S. Smith, C. Pfiffer, J. Castro, I. Patel, H.

21  Azizi, A. Ahlmeyer, H. Diaz, T. Loar, H. Smuzynski, Giwa, Jesus, Bartulaba, A. Mejia, B. Kemp,

22  S. Serda, and Does 1–100 personally excluded Plaintiff from his DME's, OHU, DPO, and

23  discontinued his life sustaining hemodialysis treatment.  Upon information and belief, Plaintiff

24  alleges that he was intentionally excluded by Defendant CDCR/CCHCS from its services after

25  filing several 1824 accommodations requesting his DMEs (Durable Medical Equipment), OHU

26  (Outpatient Housing Unit), DPO,[1] Dialysis and Transportation ADA Services at WSP and KVSP.

27  Plaintiff alleges he was also deprived onsite dialysis for several weeks in an attempt to murder

28  

---

[1] Plaintiff did not provide a definition for the abbreviation "DPO."

him because he was advocating for his patient rights and refusing to return to WSP after he attempted suicide at WSP, causing him to decompensate mentally.

Plaintiff was intentionally withheld his hemodialysis from 4/10/2019 through approximately 5/10/2019, causing him to be admitted several different times in the hospital, due to high poison of potassium in his blood after being intentionally denied equal access to CDCR/CCHCS services and programs, due to his disabilities of DME's, OHU, DPO, Dialysis and Transportation ADA needs and safety.

Also because of the above defendants' actions and inactions to properly house Plaintiff in an ADA DPM/DPO cell, Plaintiff was severely injured after falling and hitting his head on a metal bunk frame, also tearing his right rotator cuff in his right shoulder on 5/7/2019.  Defendants knew that Plaintiff was at high risk of falls from his severe low blood pressure and inadequate hemodialysis treatment.

Plaintiff suffered permanent clotted access to his veins, also causing emotional stress and near death attempts from high poison of potassium, and hospitalizations.

Claim Two

Defendants retaliated against Plaintiff to intimidate his right to grieve, by their personal refusals to accommodate Plaintiff's DME's, OHU, DPO, Dialysis and Transportation in an adequate ADA vehicle with air conditioning.  Due to the ongoing grievances and appeals advocating for his patient rights, Plaintiff was intentionally ostracized and refused his requested accommodations out of retaliation by Defendant CDCR/CCHCS at WSP and KVSP, while under the direct care of Defendants C. Pfiffer, I. Patel, J. Castro, S. Lopez, M. Spaeth, A. Mejia, B. Kemp, S. Serda, A. Ahlmeyer, and S. Davenport.  These defendants had Plaintiff transported in non ADA vehicles with no air conditioning for months, from approximately 5/10/2019 through 9/10/2019.  Out of retaliation for Plaintiff's right to grieve, Plaintiff was intentionally placed in vehicles in 120 degree heated SUVs and vans, and when he refused to be subjected to the behavior of Defendants Puga, M. Cuevas, A. Vila, J. Tavera, Lopez, Celdon, Bartulaba, Giwa, and Jesus, he was refused his life sustaining hemodialysis and returned back to his assigned housing without treatment each time he declined to ride in vehicles #125 and #310.  At times

4

1    Plaintiff had no choice and was forced against his will to be transported with severe chest pain

2    from his low blood pressure.  At times Plaintiff would arrive with his blood pressure in the 60's,

3    near death or exhausted, with difficulty breathing.  Because of Plaintiff's ongoing grievances and

4    appeals to hold the accountable parties responsible, Defendants C. Pfiffer, M. A. Felder, and I.

5    Patel ignored Plaintiff's severe right shoulder rotator tear, leaving him in extreme pain and with

6    no MRI until 2021.  There is now a full thickness tear affecting both the supraspinatus and

7    infraspinatus tendon with retraction to the level of the glenohumeral joint.  There is also atrophy

8    of both the supraspinatus and infraspinatus muscles, and a partial tear of the subscapularis

9    contribution to the rotator cuff.

10          On 5/19/2020, Defendants D. A. Lopez, B. Betancourt, Slater, M. Martinez, B. Wilson,

11   W. Hammer, DaVita Healthcare Inc., and DaVita Technician Louis Fonseca retaliated against

12   Plaintiff due to his grievances and advocating for his patient rights, in order to facilitate placing

13   Plaintiff in ad-seg administrating housing unit lock up.  A staff member's identification was

14   planted on Plaintiff and Plaintiff turned it in immediately on 5/19/2020 within minutes of his

15   knowledge of it.  But they wanted Plaintiff removed from B-yard Facility in retaliation for his

16   ongoing litigation and grievances, and for providing assistance to other inmates he filed on behalf

17   of, for beating an inmate nearly to death and shooting another in the face with a block gun almost

18   putting his eye out.

19          Plaintiff alleges that because of the retaliation to place him in ad-seg, direct intimidation

20   and coercion made him plead guilty to a RVR 115, to isolate him from other inmates after being

21   falsely accused of furnishing equipment for an escape and being in possession of escape

22   paraphernalia.  Plaintiff was placed on immediate suicide watch for his suicidal ideations, and he

23   threatened to kill himself by uncapping his dialysis catheter to bleed out.  The next day, after

24   being admitted to the crisis bed for no more than 24 hours, Plaintiff was informed by Defendants

25   Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski that he was not suicidal until he tried to kill

26   himself, and they discharged him to Defendants M. Martinez, D. A. Lopez, and M. Cuevas.

27   Plaintiff was still taken to his dialysis without mental health assistance or one to one coverage

28   when he made it clear to each defendant he was going to kill himself by uncapping his dialysis

catheter to stop the retaliations against him.

When Plaintiff arrived at DaVita Healthcare, Inc. at WSP from KVSP, he personally informed Defendants Nicole Gomez and Roger Finch of DaVita WSP that he was suicidal and that if and when he is discharged he would kill himself by uncapping his dialysis catheter. Plaintiff personally believed, based on information and belief, that it was Defendants DaVita Healthcare, Inc. and Louis Fonseca's actions and inactions that led to Plaintiff's decompensation and ideations to kill himself.  Rather than return Plaintiff to the crisis bed under suicide precaution, Defendants D. A. Lopez and M. Cuevas placed Plaintiff in a R&R holding cage once they arrived back at KVSP, then they both stated to Plaintiff that it was above their paygrade as they watched and did nothing while Plaintiff attempted to kill himself by decompensating and uncapping his dialysis catheter and bleeding out all over the cell floor continuously, with no interference by any custody or medical personnel employed by CDCR/CCHCS for almost 10 minutes.

Even though Plaintiff was in need of mental health, emergency medical or mental health was not called, and Plaintiff was transported by wheelchair to the Correctional Treatment Center (CTC).  At the CTC, instead of taking all suicide measures and precautions, Plaintiff's needs and safety were disregarded when he was placed in anther holding cell by Defendants D. A. Lopez and M. Cuevas to set one on one, when again they did nothing as they watched Plaintiff attempt again to kill himself by uncapping his dialysis catheter and bleeding out all over the cage floor continuously, without interference by any custody or medical employed by CDCR/CCHCS for almost 5 minutes.

Plaintiff alleges that he was further retaliated against, coerced, and intimidated in reprisal for his grievances, by keeping him isolated and out of the crisis bed so he could be placed in ad-seg, despite both suicide attempts on 5/20/2020 within minutes of each other.  Defendant H. Azizi evaluated Plaintiff and still released him into custody ad-seg, on one on one, placing him in a cell without any lights to visualize him.  Plaintiff was also placed in an ad-seg cell without a suicide blanket or a suicide mattress to sleep or lay on, which caused him to mentally decompensate and attempt a third suicide, by uncapping his dialysis catheter and bleeding out all over his cell floor

1   continuously, with no interference by any custody or medical personnel employed by

2   CDCR/CCHCS for almost 30 minutes.  Plaintiff alleges that he has information and belief that

3   Defendant H. Azizi placed Plaintiff in custody control so he would kill himself.  After not

4   responding to officer orders, Plaintiff was violently cell extracted by Defendants J. Valdez, B.

5   Rios, A. Vargas, and F. Jimenez, who violated CDCR cell extraction policy and procedure by

6   using unreasonable force when Plaintiff was attacked while unconscious, and then dragged from

7   his torn rotator cuff, causing further injuries.  Plaintiff was hospitalized for severe loss of blood,

8   bleeding from his rectum, hypotension, and chest pain from 5/20/2020 through 5/28/2020, at

9   which time he was placed in the crisis bed until he was transferred on 6/18/2020 to CHCF-

10  Stockton.

11          Claim Three

12          On 3/12/2019 Plaintiff was placed up to be transferred to WSP to be housed and treated

13  with hemodialysis and for his other healthcare needs and safety.  On his arrival on 3/14/2019, his

14  DME's were not issued and he was not given any access to a wheelchair, per his medical chrono,

15  which caused his mental health to decompensate rapidly after he was denied placement in the

16  level 3 yard that he was endorsed to by CDCR/CCHCS.  Plaintiff had to be placed on suicide

17  watch after he attempted his first suicide attempt when he learned he was being transferred to

18  KVSP, in retaliation and discrimination of his disabilities.

19          While under the direct care and custody of Defendant A. Youssee and Does 1–20,

20  Plaintiff was transferred on 4/10/2019 to KVSP, a non-designated facility that did not house high

21  risk medical patients.  Plaintiff at the time was, and still is, high risk due to his serious mental

22  health needs and his hemodialysis and low blood pressure.

23          After his transfer to KVSP, Plaintiff was under the direct care of Defendants S.

24  Davenport, S. Lopez, M. A. Felder, N. Igbinosa, M. Spaeth, Y. Rao, D. Pilar, S. Swaim, S. Smith,

25  C. Pfiffer, J. Castro, and I. Patel, who had full knowledge of Plaintiff's mental health needs as

26  well as his serious medical needs when they accepted an inmate patient who was high risk

27  medical and needed hemodialysis treatment.  Each defendant was fully aware that KVSP did not

28  provide hemodialysis or high risk housing.

7

1       Plaintiff was dumped in a cell for days at a time from 4/10/2019 through 5/10/2019

2    without his scheduled life sustaining treatment, to die or be forced to return to WSP.  WSP had

3    already refused to treat and house Plaintiff there and transferred Plaintiff to a facility that could

4    not facilitate his serious medical and mental health needs, causing him harm and near death

5    hospitalization each time from potassium poison and inadequate dialysis treatment.

6       Plaintiff sustained a fall in a non ADA cell, hitting his head and tearing his right rotator

7    cuff in his shoulder, while under the care of his primary care provider Defendant I. Patel and

8    Does 1–20.  Plaintiff alleges that his medical needs were intentionally undermined in retaliation

9    for the pending and ongoing grievances regarding the poor treatment by Defendant I. Patel and

10    Does 1–20, who at that point sat on a board and decided not to treat or allow a MRI on Plaintiff's

11    right shoulder, or to accommodate his onsite hemodialysis treatment.  Plaintiff alleges that his

12    serious medical needs were intentionally delayed and ignored by the administration of KVSP staff

13    in order to cause further harm and to silence his litigation and allegations of inmate/patient abuse.

14       After Plaintiff suffered his injuries, Plaintiff's access later clotted off again.  Defendant I.

15    Patel and Does 1–20 ignored Plaintiff's serious medical needs, along with his primary care

16    provider, Defendant Nephrologist R. Umamaheswara, who refused to send Plaintiff out for

17    emergency declotting, instead sending him from WSP back to KVSP into a cell without

18    emergency care for his damaged access for his hemodialysis treatment.  This caused permanent

19    injuries to the veins in Plaintiff's right arm, denying adequate dialysis services to clean his blood.

20       Had Plaintiff never been wrongfully placed at KVSP, as a high risk hemodialysis

21    inmate/patient in a cell with no dialysis, low blood pressure, and a fall risk, Plaintiff would not

22    have suffered the fall, hit his head on a metal bunk frame, and torn his rotator cuff in his shoulder.

23    Nor would Plaintiff have suffered a clotted access to his arm if he had properly been given his

24    CDCR/CCHCS services and housing at WSP on 3/14/2019, and not subjected to retaliation due to

25    his disabilities and discrimination for his right to grieve and advocate for his patient rights to not

26    be transported in over-heated vehicles with no air conditioning.

27       Plaintiff alleges that he suffered emotional stress and decompensation, causing 5 total

28    suicide attempts and excessive delay to his serious medical injuries of his torn rotator cuff and

1   suicidal ideations.

2            Request for Relief

3            Plaintiff seeks to sue each entity and person in their individual capacities, and seeks

4   declaratory and compensatory relief.

5   **III.   Discussion**

6            As discussed below, the first amended complaint states cognizable claims against certain

7   defendants.  However, the remainder of Plaintiff's first amended complaint again fails to comply

8   with Federal Rules of Civil Procedure 8 and attempts to improperly join claims in violation of

9   Rules 18 and 20.

10           **A.      Federal Rule of Civil Procedure 8**

11           Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim

12   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations

13   are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

14   conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must

15   set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

16   its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations

17   are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,

18   572 F.3d at 969.

19           Here, Plaintiff's complaint is neither short nor plain.  Many of Plaintiff's allegations are

20   rambling, conclusory, or simply recite the elements of various causes of action without supporting

21   factual allegations.  General assertions regarding the actions or inactions of unspecified or large

22   groups Defendants who allegedly violated Plaintiff's rights are not sufficient.  Plaintiff fails to

23   include factual allegations identifying what happened, when it happened, which Defendant was

24   involved, and the specific actions or inactions of any involved Defendants.

25           **B.      Federal Rules of Civil Procedure 18 and 20**

26           Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed.

27   R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*,

28   507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so

9

long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise separate, unrelated events in a single action, even if they occurred at the same institution.  For instance, Plaintiff may not, in a single case, assert a claim related to one defendant's failure to provide him with air-conditioned transportation to medical appointments while simultaneously asserting a claim regarding other defendants' failures to provide Plaintiff with suicide prevention measures.  Similarly, Plaintiff may not assert a claim related to retaliation for filing grievances about his healthcare and also assert a claim regarding discrimination based on race or disability in the same action.  Unrelated claims involving multiple defendants belong in different suits.

Plaintiff was informed that if he continued to join unrelated claims, the Court will choose which properly joined claims may proceed.

## C.    Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

10

Here, Plaintiff's complaint improperly lumps together defendants in his claims. The allegations do not make clear which defendant is responsible for which act or omission, as Plaintiff lists groups of defendants when discussing each claim. Despite being provided the relevant pleading standards, Plaintiff has been unable to cure this deficiency.

**D.     Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity). Therefore, although Plaintiff is suing all defendants in their individual capacities, Plaintiff cannot pursue claims for damages or injunctive relief against CDCR/CCHCS in this action.

**E.     Supervisory Liability**

To the extent Plaintiff seeks to hold any Defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the

11

constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### F.    Private Defendants

Plaintiff has named as defendants DaVita Healthcare, Inc. as well as several of its employees.

"Under Section 1983, a 'person' acting under color of law may be sued for violations of the U.S. Constitution or federal laws.  The term 'persons' under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) (internal citation omitted).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

The Supreme Court and the Ninth Circuit have recognized at least four tests that facilitate identification of state action.  Namely, "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations*, 975 F.3d 742, 747 (2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)); *see Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021).  Satisfaction of any the tests is enough to find state action, provided no "countervailing" factor defeats a finding of state action. *Pasadena Republican Club*, 985 F.3d at 1167; *Rawson*, 975 F.3d at 747. Regardless of the test, the question is simply always whether a defendant has exercised power

possessed and made possible because state law.  *Pasadena Republican Club*, 985 F.3d at 1167.

Relevantly, physicians who contract with prisons to provide healthcare to inmates are state actors.  *See, e.g.*, *West*, 487 U.S. at 51–54; *George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010).  However, private doctors, nurses, and hospitals who have not assumed the State's obligation to provide medical care to inmates, are not state actors just because they provide one-off medical treatment to an inmate.  *See, e.g.*, *West*, 487 U.S. at 51–54; *Felix v. Casey*, No. 2:18-cv-3185-KJM-AC-P, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021); *Probst v. Adams Cty. Sheriff's Dep't*, No. 1:20-cv-00032-DCN, 2021 WL 1554064, at *3 (D. Idaho Apr. 19, 2021); *see also Rawson*, 975 F.3d at 749.

Although Plaintiff alleges in a conclusory fashion that DaVita Healthcare, Inc. ("DaVita") is a private contractor of CDCR/CCHCS, and at least one of the DaVita employees is a subcontractor of DaVita, it is not clear that those defendants, other than the instances in which they treated or interacted with Plaintiff, cooperated to a sufficient degree with CDCR to provide care to inmates.  Even assuming that the private defendants, including DaVita and the individually named employees, are contracted with CDCR, without more it is not clear whether they are sufficiently cloaked in the authority of the State or have assumed the State's obligation to provide sufficient care to prisoners to consider them state actors.  Despite being provided the relevant pleading and legal standards, Plaintiff has been unable to cure this deficiency.

### G.      Americans with Disabilities Act and Rehabilitation Act ("ADA" and "RA")

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  *Id.* § 12131(2).

While the RA has the additional requirement that the program or activity receive federal

1    funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and

2    obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same

3    analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d

4    1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

5          To the extent Plaintiff intends to sue the individual named defendants for violation of his

6    rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official

7    in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*,

8    288 F.3d 1145, 1156 (9th Cir. 2002).  The proper defendant in ADA actions is the public entity

9    responsible for the alleged discrimination.  *U.S. v. Georgia*, 546 U.S. 151, 153 (2006).  State

10   correctional facilities are "public entities" within the meaning of the ADA.  *See* 42 U.S.C. §

11   12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong*

12   *v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

13         In order to state a claim under the ADA, the plaintiff must have been "improperly

14   excluded from participation in, and denied the benefit of, a prison service, program, or activity on

15   the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023. Plaintiff has alleged no facts

16   demonstrating such exclusion or denial.  While Plaintiff alleges that he does have medical

17   conditions and experienced suicidal ideations, he does not allege that any of his illnesses led to an

18   exclusion or denial of a prison service, program, or activity.  Further, plaintiff's allegations of

19   inadequate medical care do not state a claim under the ADA.  *Bryant v. Madigan*, 84 F.3d 246,

20   249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *see also*

21   *Simmons*, 609 F.3d at 1022 (Inadequate or negligent medical treatment alone does not constitute

22   an unlawful failure to accommodate under the ADA or the Rehabilitation Act.). Despite being

23   provided the relevant pleading and legal standards, Plaintiff has been unable to cure this

24   deficiency.

25         **H.      First Amendment – Retaliation**

26         Allegations of retaliation against a prisoner's First Amendment rights to speech or to

27   petition the government may support a section 1983 claim.  *Silva v. Di Vittorio*, 658 F.3d 1090,

28   1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham*

*v. Bojorquez*, 866 F. 2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic

elements: (1) An assertion that a state actor took some adverse action against an inmate

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v.*

*Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d

1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional

violation.  The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114

(internal citations omitted).  A causal connection between the adverse action and the protected

conduct can be alleged by an allegation of a chronology of events from which retaliation can be

inferred.  *Id.*  The filing of grievances and the pursuit of civil rights litigation against prison

officials are both protected activities.  *Rhodes*, 408 F.3d at 567–68.  The plaintiff must allege

either a chilling effect on future First Amendment activities, or that he suffered some other harm

that is "more than minimal." *Watison*, 668 F.3d at 1114.  A plaintiff successfully pleads that the

action did not reasonably advance a legitimate correctional goal by alleging, in addition to a

retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were

"unnecessary to the maintenance of order in the institution." *Id.*

Plaintiff alleges that out of retaliation for filing grievances, he was intentionally placed in

vehicles in 120 degree heated SUVs and vans, and when he refused to be placed in the vehicles,

he was refused hemodialysis and returned to his assigned housing without treatment.  Plaintiff

also alleges in a conclusory fashion that he was retaliated against when DaVita employees planted

a DaVita staff member's identification on him, when he was not placed in a crisis bed after

expressing suicidal ideations, when he was transferred to KVSP, and when he was refused a MRI

on his right shoulder.  However, despite being provided with the relevant legal standards, Plaintiff

fails to link specific defendants to many of these allegations, or allege that these actions or

inactions in any way chilled the exercise of his First Amendment rights.  In addition, these claims

1   do not appear to be properly joined.

2       **I.    Eighth Amendment**

3           1.    Deliberate Indifference to Serious Medical Needs

4           A prisoner's claim of inadequate medical care does not constitute cruel and unusual

5   punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

6   "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

7   2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate

8   indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

9   to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

10  wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

11  indifferent."  *Jett*, 439 F.3d at 1096.

12          A defendant does not act in a deliberately indifferent manner unless the defendant "knows

13  of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825,

14  837 (1994).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609

15  F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is

16  shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible

17  medical need" and the indifference caused harm.  *Jett*, 439 F.3d at 1096.

18          In applying this standard, the Ninth Circuit has held that before it can be said that a

19  prisoner's civil rights have been abridged, "the indifference to his medical needs must be

20  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

21  cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429

22  U.S. at 105–06).  "[A] complaint that a physician has been negligent in diagnosing or treating a

23  medical condition does not state a valid claim of medical mistreatment under the Eighth

24  Amendment.  Medical malpractice does not become a constitutional violation merely because the

25  victim is a prisoner."  *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45 F.3d 1310,

26  1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to

27  serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

28          Further, a "difference of opinion between a physician and the prisoner—or between

medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

As pled, Plaintiff's first amended complaint fails to state a cognizable claim for inadequate medical treatment related to his hemodialysis treatments.  It is not clear whether Plaintiff is alleging that he was denied access to hemodialysis treatments, or that he was denied access to on-site hemodialysis treatments.  Plaintiff alleges that he did not have access to hemodialysis treatments at KVSP, but further alleges that, on different unspecified dates, he refused transportation to WSP for hemodialysis due to the extreme temperatures in the transportation vehicles.  Plaintiff may state a claim related to these allegations, but he has failed to specifically identify which Defendants were responsible for these decisions (aside from providing a list of most of the named defendants), or to provide more than conclusory allegations that these decisions were made to intentionally harm or retaliate against Plaintiff.

In addition, Plaintiff fails to state an Eighth Amendment deliberate indifference claim related to the failure to treat Plaintiff's right shoulder rotator cuff tear, and this claim is not properly joined. Plaintiff has been given the pleading and legal standards for an Eighth Amendment claim, but has been unable to cure the deficiency.

At the pleading stage, the Court finds that the first amended complaint states a cognizable claim against Defendants Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski, when they allegedly informed Plaintiff that he was not suicidal until he tried to kill himself and released Plaintiff from a suicide crisis bed on May 20, 2020.  Plaintiff also states a cognizable claim against Defendants D. A. Lopez, and M. Cuevas for watching Plaintiff attempt to kill himself

when he uncapped his dialysis catheter and bled out over his cell floor, without attempting to

interfere, and then transporting Plaintiff to the CTC and watching him attempt to kill himself

again in the same manner in a holding cell, without attempting to protect Plaintiff.  The Court

further finds that Plaintiff's claims regarding his release from the crisis bed and his two

subsequent suicide attempts are properly joined.

Plaintiff alleges that after the second suicide attempt, he was evaluated by Defendant H.

Azizi, who released him into custody ad-seg on one-on-one, but placed him in a cell without any

lights on, a suicide blanket, or a suicide mattress, where Plaintiff attempted a third suicide.

However, Plaintiff alleges only that he has information and belief that Defendant H. Azizi placed

Plaintiff in custody control so Plaintiff would kill himself, but does not allege any facts that would

support that Defendant H. Azizi was aware that a one-on-one placement in custody would result

in a third suicide attempt by Plaintiff, and therefore these allegations do not state a cognizable

claim.  At most, these allegations demonstrate a difference of opinion between a physician and a

prisoner.

## 2.    Extreme Temperatures

It is axiomatic that a prison official's failure to provide inmates relief from extreme

temperatures may constitute an Eighth Amendment violation.  *Wilson v. Seiter*, 501 U.S. 294, 304

(1991) ("low cell temperature at night combined with a failure to issue blankets" could constitute

an Eighth Amendment violation); *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) ("The

district court did not err . . . in concluding that dangerously high temperatures that pose a

significant risk to detainee health violate the Eighth Amendment."); *Chandler v. Crosby*, 379 F.3d

1278, 1294 (11th Cir. 2004) ("[T]he Eighth Amendment applies to prisoner claims of inadequate

cooling and ventilation.").  The Ninth Circuit has held that the "Eighth Amendment guarantees

adequate heating" but not necessarily a "comfortable" temperature.  *Keenan v. Hall*, 83 F.3d

1083, 1091 (9th Cir. 1996).  One measure of an inadequate, as opposed to merely uncomfortable,

temperature is that it poses 'a substantial risk of serious harm.'"  *Graves*, 623 F.3d at 1049.

Plaintiff may state a cognizable Eighth Amendment claim arising out of his transportation

1   to hemodialysis treatments during a heat wave and in vehicles without air conditioning.  As pled,

2   however, it is not clear on which dates these transports occurred, which defendants were

3   responsible for the transportation conditions, or that any of these claims are properly joined to the

4   others proceeding in this action.

5                           3.      Excessive Force

6          For claims of excessive physical force, the issue is "whether force was applied in a good-

7   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

8   *Hudson*, 503 U.S. at 7.  Relevant factors for this consideration include "the extent of injury . . . [,]

9   the need for application of force, the relationship between that need and the amount of force used,

10  the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the

11  severity of a forceful response.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).

12  Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use

13  of force to cause harm always violates the Eighth Amendment, regardless of whether or not

14  significant injury is evident.  *Hudson*, 503 U.S. at 9–10; *Oliver v. Keller*, 289 F.3d 623, 628 (9th

15  Cir. 2002).

16         Plaintiff may be able to state a cognizable claim for excessive force based on the

17  allegation that he was physically cell-extracted while he was unconscious and not responding to

18  orders, when Defendants J. Valdez, B. Rios, A. Vargas, and F. Jimenez dragged Plaintiff from his

19  torn rotator cuff.   However, this claim is not properly joined. Plaintiff was previously cautioned

20  that he may not join unrelated claims.

21         **J.      Fourteenth Amendment**

22                           1.      Equal Protection

23         The Equal Protection Clause requires that persons who are similarly situated be treated

24  alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985); *Shakur v.*

25  *Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by

26  showing that defendants intentionally discriminated against a plaintiff based on his membership

27  in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690,

28  702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly

                                                19

1   situated individuals were intentionally treated differently without a rational relationship to a

2   legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601–02 (2008); *Village*

3   *of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580,

4   592 (9th Cir. 2008).

5          Plaintiff's complaint fails to state an equal protection claim.  While Plaintiff uses the word

6   "discrimination," Plaintiff does not allege that he was treated differently on the basis of his

7   membership in a protected class, whether his race or his disability.  In addition, "the disabled do

8   not constitute a suspect class" for equal protection purposes.  *Does 1–5 v. Chandler*, 83 F.3d

9   1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249).  Finally,

10   Plaintiff has not shown that he was intentionally treated differently than other similarly situated

11   inmates without a rational relationship to a legitimate state purpose.  Plaintiff's conclusory

12   statements about discrimination do not suffice. Therefore, he has not stated any claim for a

13   violation of his Fourteenth Amendment rights.

14                    2.      Failure to Investigate

15          To the extent Plaintiff alleges that any Defendants failed to investigate how Defendant

16   Louis Fonseca's prison identification card came into Plaintiff's possession, that is also not a basis

17   for a plausible due process claim.  *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019).  To

18   the degree Plaintiff is trying to hold the individuals or others liable for an independent,

19   unspecified constitutional violation based upon an allegedly inadequate investigation, there is no

20   such claim.  *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can

21   find no instance where the courts have recognized inadequate investigation as sufficient to state a

22   civil rights claim unless there was another recognized constitutional right involved."); *Page v.*

23   *Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim

24   alleging that officers failed to conduct thorough investigation of plaintiff's complaints because

25   plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a

26   'thorough' investigation or a particular outcome").

27          **K.      Doe Defendants**

28          Plaintiff names 100 Doe defendants.  "As a general rule, the use of 'John Doe' to identify

                                                    20

a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

### L.   Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

## IV.   Conclusion and Recommendations

Based on the foregoing, the Court finds that the first amended complaint states cognizable claims against Defendants Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski for deliberate indifference to serious medical needs in violation of the Eighth Amendment when they released Plaintiff from a suicide crisis bed, and against Defendants D. A. Lopez and M. Cuevas for deliberate indifference to serious medical needs in violation of the Eighth Amendment when they failed to intervene during Plaintiff's two suicide attempts.

However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants or fails to properly join claims in compliance with Federal Rules of Civil Procedure 18 and 20.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED as follows:

21

1.  This action proceed on Plaintiff's first amended complaint, filed April 14, 2022, (ECF No.
    17), against Defendants Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski for
    deliberate indifference to serious medical needs in violation of the Eighth Amendment
    when they released Plaintiff from a suicide crisis bed, and against Defendants D. A. Lopez
    and M. Cuevas for deliberate indifference to serious medical needs in violation of the
    Eighth Amendment when they failed to intervene during Plaintiff's two suicide attempts;
    and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims
    upon which relief may be granted or failure to properly join claims in compliance with
    Federal Rules of Civil Procedure 18 and 20.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 3, 2022**                         /s/ *Barbara A. McAuliffe*
                                                 UNITED STATES MAGISTRATE JUDGE

22