# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMISI JERMAINE CALLOWAY, | Case No. 1:21-cv-01450-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| YOUSSEE, *et al.*, | (ECF No. 60) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**I.     Introduction**

Plaintiff Jamisi Jermaine Calloway ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint against Defendants Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski (the "Medical Defendants") for deliberate indifference to serious medical needs in violation of the Eighth Amendment when they released Plaintiff from a suicide crisis bed, and against Defendants D. A. Lopez and M. Cuevas (the "Custody Defendants") for deliberate indifference to serious medical needs in violation of the Eighth Amendment when they failed to intervene during Plaintiff's two suicide attempts.

Currently before the Court is Defendants' motion for summary judgment on the grounds that: (1) Defendants were not deliberate indifferent to Plaintiff's serious medical needs; (2) Defendants are entitled to qualified immunity from suit; and (3) Plaintiff did not properly

1  exhaust his administrative remedies against Defendants Lopez and Cuevas before bringing suit.

2  (ECF No. 60.)[1]  Following a stay of briefing pending resolution of the parties' discovery dispute,

3  Plaintiff filed an opposition to the motion for summary judgment on July 5, 2023.  (ECF No. 68.)

4  Defendants filed a reply on July 28, 2023.  (ECF No. 73.)  Defendants' motion for summary

5  judgment is fully briefed.  Local Rule 230(l).  For the reasons set forth below, the Court

6  recommends that Defendants' motion for summary judgment be granted.[2]

7  **II.    Summary Judgment Standard**

8  Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

9  and any affidavits provided establish that "there is no genuine dispute as to any material fact and

10 the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is

11 one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty*

12 *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a

13 reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*

14 The party seeking summary judgment "always bears the initial responsibility of informing

15 the district court of the basis for its motion, and identifying those portions of the pleadings,

16 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

17 which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

18 *Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies

19 depending on whether the issue on which summary judgment is sought is one in which the

20 movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty*

21 *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at

22 trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

23 the moving party."  *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will

24 have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  (ECF No. 60-2.); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

[2] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

2

1 absence of evidence to support the nonmoving party's case." *Id.*

2 If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III. Discussion**

    **A. Evidentiary Objections**

Plaintiff appears to raise objections to Defendants' evidence, setting forth legal standards regarding authentication and hearsay. (ECF No. 68, pp. 20–22.) Plaintiff argues that Defendants

3

did not produce any declarations from any of the named defendants to authenticate the exhibits attached to their motion for summary judgment, while Plaintiff attached his own declaration to authenticate the exhibits attached to his opposition brief. Plaintiff further argues that his exhibits are self-authenticating pursuant to Federal Rule of Evidence 901(b)(4) and because Plaintiff has personal knowledge of the material and testified to the authenticity of the exhibits.

Plaintiff's objections to Defendants' exhibits for lack of authentication are overruled. Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011). All of Defendants' exhibits are also attached to Plaintiff's opposition brief, (*compare* ECF No. 60-3, Exs. A–D *with* ECF No. 68, Exs. 5, 11, 16, 28), and the Court notes the absence of any evidence or argument suggesting the existence of a legitimate challenge to the records on authentication grounds. *See Chamberlain v. Les Schwab Tire Center of Cal., Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal. Dec. 3, 2012) (citing *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006)) (rejecting "purely procedural" authentication objection).

Further, Federal Rule of Civil Procedure 56(c)(1) specifically requires that a party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Similarly, pursuant to Local Rule 260(b), a party opposing a motion for summary judgment is required to deny those facts that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." To the extent Plaintiff has identified that a fact is in dispute but fails to cite to particular portions of any supporting evidence or otherwise demonstrate that the evidence relied upon by Defendants is inadmissible, such fact will be accepted as undisputed.

///

///

///

**B.     Undisputed Material Facts ("UMF")**[3]

1. Plaintiff has made many suicidal gestures while incarcerated within CDCR.  (ECF No. 60-3 ("Tartaglio Decl."), Ex. A ("Calloway Depo.") at 86:21–25, 54:15–22.)

2. In his operative complaint, Plaintiff alleges that: "[Plaintiff] was placed on immediate suicide watch for his suicidal ideations to kill himself by threatening to uncap his dialysis catheter to bleed-out which the next day after being admitted in the crisis bed for no less than 24 hours he was informed by Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski that he was not suicidal until he tried to kill himself and discharging him to M. Martinez, D.A. Lopez, and M. Cuebas.  [Plaintiff] was still taking to his dialysis without mental health assistance or one to one coverage when he made it clear to each defendant he was going to kill himself by uncapping his dialysis catheter to stop the retaliations against him.  (ECF No. 17 ("First Am. Compl.") at 13.)

3. In his operative complaint, Plaintiff alleges that: "Rather than return [Plaintiff] back to the crisis bed under suicidal precaution D.A. Lopez and M. Cuebas placed him in a R&R holding cage once they arrived back at Kern Valley State Prison (KVSP) then they both stated to [Plaintiff] that it was above their paygrade as they watch and did nothing while [Plaintiff] attempted to kill himself by decompensating and uncapping his dialysis catheter and bleeding-out all over the cell floor continuancely without no interference by any custody or medical personnel employed by CDCR/CCHCS for almost 10 minutes non

---

[3]     *See* Defendants' Statement of Undisputed Facts in Support of Summary-Judgment Motion, (ECF No. 60-1), and Plaintiff's Separate Statement of Disputed Facts in Support of Motion for Opposition of Defendants' Summary Judgment, (ECF No. 68, pp. 23–32).  Although Plaintiff has attempted to incorporate by reference the voluminous exhibits attached to his opposition, the Court notes that he has done so only by reference to the exhibit numbers but does not cite to specific pages.  (*Id.*)  Plaintiff was previously cautioned against filing large quantities of exhibits in support of his arguments, and advised that the Court does not have the resources or the duty to wade through voluminous exhibits to determine if they provide support for Plaintiff's arguments.  (ECF Nos. 28, 62, 69.)
Accordingly, Plaintiff did not fully comply with the rules in preparing his opposition, by failing to provide "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts.  Local Rule 260(b).  As a result, Defendants' Statement of Undisputed Facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint and declaration in support of his opposition to the summary judgment motion, signed under penalty of perjury.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

stop. Even though [Plaintiff] was in need of mental health but no emergency medical or mental health was not called and he was transported by wheelchair to the Correctional Treatment Center (CTC) where instead of taking all suicidal measures and precautions [Plaintiff] needs and safety was disregarded when he was placed in another holding cage by two untrained officers D.A. Lopez and M. Cuebas to set one on one when again they did nothing as they watch [Plaintiff] attempt again to kill himself by uncapping his dialysis catheter and bleeding-out all over the cage floor continuancely without no interference by any custody or medical personnel employed by CDCR/CCHCS for almost 5 minutes non stop." (*Id.* at 14 (unedited text).)

4. Plaintiff's threats of suicide were conditional and made to avoid being transferred to administrative segregation. (Tartaglio Decl., Ex. C ("Grievance HC 20000448") at 3, 4; Calloway Depo. at 42:4–7, 45:20–23, 55:9–11.)

5. CDCR policy does not require medical staff to uncritically take, at face value, an inmate's statement that he is suicidal. For example, CDCR policy distinguishes between genuine suicidal "attempts" and performative suicidal "gestures." (*See* Tartaglio Decl., Ex. D ("CDCR Mental Health Services Delivery System Program Guide, 2021 Rev.") at 12-10-6.) And clinicians use their "best clinical judgment" to assess an inmate's risk of suicide, rather than just assuming that an inmate's threat of suicide is genuine. (*Id.* at 12-10-11.)

6. Plaintiff cannot secure any equitable relief here because this case concerns a few discrete events that happened in May of 2020. (ECF No. 24 at 2.)

7. For the first suicidal gesture, medical personnel were already nearby when Plaintiff uncapped his catheter. (Calloway Depo. at 47:7–17.)

8. During Plaintiff's first suicidal gesture, Defendants Lopez and Cuevas repeatedly told Plaintiff to cap his catheter, which would have stopped the bleeding. (*Id.* at 48:1–6.)

9. For the second suicidal gesture, Defendants Lopez and Cuevas called for medical assistance once they saw the blood in the holding cage Plaintiff was in. (*Id.* at 51:4–14.)

10. At his deposition, Plaintiff discussed two grievances (9717 and HC 20000448) that are potentially relevant to his claims against Defendants Cuevas and Lopez in this case.

1  Plaintiff confirmed that there were no other relevant appeals. (*Id.* at 80:1–6.)

2  11. At his deposition, Plaintiff argued that grievance number 9717 exhausted his claims
3  against Defendants Lopez and Cuevas. (*Id.* at 65:5–22.) But grievance 9717 does not
4  accuse Defendant Lopez or Cuevas of refusing to help Plaintiff after Plaintiff had
5  uncapped his catheter. Instead, the grievance complains that Plaintiff was given a
6  "fabricated" rules violation report and then subjected to excessive force. (Tartaglio Decl.,
7  Ex. B.)

8  12. Plaintiff contends that the following portion of the 9717 appeal exhausted his
9  administrative remedies against Defendants Lopez and Cuevas: "I request that I be issued
10 all involved staff names was transported me, witnessed all (3) attempted suicides, was
11 physically involved of using excessive force in extraction 5/22/20 and who refused me my
12 DME's since my return from hospital on 5/22/20." (Calloway Depo. at 65:5–22.)

13 13. In Health Care ("HC") grievance 20000448, Plaintiff complained that medical staff had
14 denied him access to a mental health crisis bed. (Tartaglio Decl., Ex. C at 4.) Plaintiff
15 submitted his grievance in June of 2020. (*Id.* at 6.) After the grievance was denied,
16 Plaintiff submitted an appeal in September of 2020, that mentioned Defendant Lopez. (*Id.*
17 at 5.) Plaintiff did not mention Lopez in the original, June of 2020 grievance. (Calloway
18 Depo. at 73:7–10.)

### C. Parties' Positions

Defendants contend that Plaintiff's claims against the Medical Defendants fail because the Medical Defendants were not required to accept, at face value, Plaintiff's threat to kill himself if he were moved to administrative segregation. Plaintiff may not use conditional, insincere threats of suicide to dictate to staff where he is housed while incarcerated. Plaintiff's claims against the Custody Defendants are unsustainable because Plaintiff testified during his deposition that during the first suicidal gesture there were many medical staff nearby, and during the second suicidal gesture the Custody Defendants activated their alarms after they noticed Plaintiff was bleeding. Plaintiff also did not administratively exhaust his claims against the Custody Defendants. Finally, all Defendants are entitled to qualified immunity from suit. Plaintiff abused CDCR's mental

health resources and bullied staff into housing him in a facility to his liking, and Defendants are entitled to qualified immunity for their response to Plaintiff's tactics.

In opposition, Plaintiff argues that he exhausted his administrative remedies as to all Defendants when he alerted the prison as to the nature of the wrong for which redress was sought, by filing his complaint against custody and medical personnel and requested the names of all witnesses and staff that escorted him on May 20, 2020. At no time did the prison reject or order Plaintiff to correct or fully name other defendants, nor did they give the requested names of witnesses or the involved escorting officers, the Custody Defendants. Therefore Plaintiff exhausted all his administrative remedies because his CDCR/CCHCS 602s were deliberately and intentionally obstructed to hinder Plaintiff's request to locate the involved parties. Defendants are not entitled to qualified immunity because they acted with reckless disregard to Plaintiff's established rights and his high risk of serious medical and mental health needs when they denied Plaintiff medical and mental health services even after Plaintiff reached out for suicidal intervention prior to each suicide attempt. Plaintiff appears to request leave to file an amended complaint to add additional defendants and claims. Plaintiff also argues that Defendants violated his rights under the Americans with Disabilities Act, Rehabilitation Act, and *Armstrong*, *Plata*, and *Coleman* Plans, among other rights.[4]

In reply, Defendants argue that Plaintiff's opposition contains nothing of substance that creates a material issue of disputed fact, but rather consists of vague and conclusory arguments. Plaintiff's opposition does not contain any case law that negates Defendants' qualified immunity defense. Any arguments discussing the *Armstrong* remedial plan, the Americans with Disabilities Act, the California Penal Code, negligence, and the Bane Act are all irrelevant because the Court's screening order recognized only Eighth Amendment causes of action. Because Plaintiff's opposition brief does nothing to invalidate Defendants' summary-judgment evidence and arguments, the opposition brief does not create a triable issue of material fact.

---

[4] To the extent Plaintiff's opposition to Defendants' motion for summary judgment raises claims other than for deliberate indifference to serious medical needs in violation of the Eighth Amendment, or against individuals other than Defendants Rao, Pilar, Diaz, Loar, Smuzynski, Lopez, or Cuevas, the Court notes that all other claims and defendants were previously dismissed from this action for failure to state a cognizable claim or for failure to properly join claims in compliance with Federal Rules of Civil Procedure 18 and 20. (ECF Nos. 17, 20.)

**D.     Analysis**

Based on the undisputed facts, the Court finds that Plaintiff failed to exhaust his administrative remedies as to his claims against the Custody Defendants. In addition, all Defendants are entitled to qualified immunity as to Plaintiff's Eighth Amendment claims. In light of these findings and recommendation, the Court finds it unnecessary to address the remaining arguments as to the merits of Plaintiff's claims against the Defendants and recommends that Defendants' motion for summary judgment be granted and Plaintiff's claims be dismissed, with prejudice.

1.     Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing

*Albino*, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of exhaustion remains with Defendants.  *Id.* (quotation marks omitted).

Effective June 1, 2020, the California prison grievance system has two levels of review. Cal. Code Regs. tit. 15, § 3480, *et seq.*  Pursuant to this system, an inmate may "dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." *Id.* § 3481(a).  Inmate claimants are required to "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]" *Id.* § 3482(c).  In response, the inmate claimant will receive a written decision from the Institutional or Regional Office of Grievances clearly explaining the reasoning for the Reviewing Authority's decision as to each claim.  *Id.*  The inmate claimant has the ability to submit a written appeal concerning one or more claims to dispute the decision by the Institutional or Regional Office of Grievances, and in response will receive a written decision from the Office of Appeals clearly explaining the reasoning for the decision as to each claim.  *Id.*  Generally, "[c]ompletion of the review process by the Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant within the Department." *Id.* § 3486.

          a.     *Grievance Number 9717*

Plaintiff argues that he exhausted his administrative grievances with respect to his claims against the Custody Defendants because in grievance number 9717 he stated that "Warden C. Pfeiffer directed his chain of command officers and administrative staff Does 1–20 to use excessive force, advance my suicide in a attempt to murder me by denying me Due Process of Equal Protection of the constitutional laws and deny me mental health services Title 15 section 3865(a)–(c)" and requested that he "be issued all involved staff names who transported me, witnessed all (3) attempted suicides, was physically involved of using excessive force in extraction 5/22/20 and who refused me my DME's since my return from hospital on 5/28/20." (ECF No. 60-3, p. 26.)  Plaintiff contends that because the prison never provided Plaintiff with the requested names, his grievances were obstructed and his administrative remedies should be

10

considered exhausted.  (ECF No. 68, pp. 7–8); UMF 12.

However, at no point in grievance number 9717 does Plaintiff allege, as he does in the instant action, that Defendant Lopez or Cuevas, or any staff member, stood by and refused to assist Plaintiff while he uncapped his catheter in a suicide attempt.  UMF 11.  Rather, the grievance appears to allege that Does 1–20 used excessive force to advance Plaintiff's suicide, or merely "witnessed" his suicide attempts.  Moreover, Plaintiff cites to no authority, and the Court is aware of none, that states that a prison's failure to provide identifying information for staff members, where Plaintiff has not also provided some identifying information of the relevant individuals, suffices to exhaust Plaintiff's administrative remedies.  Therefore, grievance number 9717 does not exhaust Plaintiff's administrative remedies as to his claims against the Custody Defendants.  Plaintiff also fails to carry his burden that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Williams*, 775 F.3d at 1191.

b. *Health Care Grievance Number HC 20000448*

Plaintiff does not name Defendant Cuevas, and only refers to Defendant Lopez in his response to the denial of health care grievance number HC 20000448.  UMF 13.  Even accepting Plaintiff's argument that a reference to Defendant Lopez in his response to the initial decision is sufficient, HC 20000448 only raises claims that medical staff denied Plaintiff access to a mental health crisis bed.  The only claim proceeding against Defendant Lopez in this action is "for watching Plaintiff attempt to kill himself when he uncapped his dialysis catheter and bled out over his cell floor, without attempting to interfere, and then transporting Plaintiff to the CTC and watching him attempt to kill himself again in the same manner in a holding cell, without attempting to protect Plaintiff."  (ECF No. 17, pp. 17–18.)  Therefore, HC 20000448 does not exhaust Plaintiff's administrative remedies as to his claims against the Custody Defendants.

2. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231

11

(2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"  *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court uses a two-part inquiry.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'"  *Tolan v. Cotton* 572 U.S. 650, 655–56 (2014) (citation omitted).  "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."  *Id.* at 656 (citation omitted).  A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  The inquiry as to whether the right was clearly established is "solely a question of law for the judge."  *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1085 (9th Cir. 2009)).

To show that a right was clearly established, the plaintiff must demonstrate that, at the time of the alleged violation, the state of the law gave fair warning that the relevant conduct was unconstitutional.  *See Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117-18 (9th Cir. 2017) (stating that the plaintiff bears the burden of showing that the rights allegedly violated were clearly established); *Gordon v. County. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("[t]he plaintiff bears the burden of proving that the right allegedly violated was clearly established" at the time of the violation).

It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Stanton*, 571 U.S. at 6 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).  A right is clearly established where it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."  *Hines v. Youseff*, 914 F.3d

1219, 1229 (9th Cir. 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In determining if the right is clearly established, the court must consider the law, "in light of the specific context of the case, not as a broad general proposition." *Hines*, 914 F.3d at 1229 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

### a. *Custody Defendants*

Even assuming Plaintiff properly exhausted his administrative remedies as to the Custody Defendants, Defendants contend that they should be granted qualified immunity from suit because there is no case law, clearly established or otherwise, that required the Custody Defendants to do more than they did during Plaintiff's two suicidal gestures. It is undisputed that medical personnel were nearby when Plaintiff first uncapped his catheter, the Custody Defendants then repeatedly told Plaintiff to cap his catheter, and when Plaintiff uncapped his catheter the second time the Custody Defendants called for medical assistance once they saw the blood in Plaintiff's holding cage. UMF 7–9. Plaintiff argues that there is a dispute of fact because the Custody Defendants did not affirmatively enter the holding cell to cap Plaintiff's catheter after Plaintiff refused to do so himself, and because CDCR did not comply with policy and procedures and train their staff to place Plaintiff on suicide watch. (ECF No. 68, pp. 28–29.) However, this is an argument about the appropriate response to Plaintiff's actions—not a dispute of fact regarding the events that occurred.

It is clearly established that the Eighth Amendment protects against deliberate indifference to a prisoner's serious risk of suicide. *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *judgment vacated*, *City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *and opinion reinstated*, 658 F.3d 897 (9th Cir. 2011). It is also clearly established that denying a prisoner access to appropriate medical care is an Eighth Amendment violation. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989); *see also Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1984) ("Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'").

However, Plaintiff contends that the Custody Defendants are not entitled to qualified immunity because they did not follow applicable regulations when they failed to take adequate

1  suicide prevention precautions, thereby disregarding Plaintiff's serious medical and mental health
2  needs.  (ECF No. 68, pp. 28–29.)  But the undisputed evidence in the record reveals that the
3  Custody Defendants did take such measures, when they immediately notified medical staff that
4  Plaintiff had uncapped his catheter and that he was bleeding.  Plaintiff testified during his
5  deposition that medical staff were already nearby when Plaintiff first uncapped his catheter, UMF
6  7, and according to medical records attached to Plaintiff's opposition brief, more medical staff
7  were notified at 1750 hours that further assistance was needed.  Additional medical staff arrived
8  at Plaintiff's location one minute later, at 1751.  (ECF No. 68-2, p. 57.)  At 1850, Plaintiff was
9  cleared by Dr. Zepp, who is not a party to this action, to be placed "in holding cell with direct
10 observation."  (*Id.*)  At 1857, medical staff were "[n]otified by custody that while under direct
11 observation in hold cell, [Plaintiff] again unclamped dialysis ports and blood was flowing out."
12 (*Id.*)  Plaintiff was "immediately pulled out from cell and dialysis catheters clamped."  (*Id.*)

13      Plaintiff has not directed the Court to any decisional law holding that non-medical custody
14 staff are required to provide medical assistance (such as capping Plaintiff's dialysis catheter)
15 when medical staff are already in the vicinity or have already been notified that a prisoner is in
16 need of medical assistance.  Plaintiff also has not identified any case authority requiring custody
17 staff to place Plaintiff on additional suicide precautions when he was already under direct
18 observation at the direction of medical personnel.  As a result, no reasonable correctional officer
19 would have understood that their actions—asking Plaintiff to recap his catheter, or immediately
20 calling for medical assistance—violated Plaintiff's constitutional rights.  Therefore, Defendants
21 Lopez and Cuevas are entitled to qualified immunity.

22                    b.      *Medical Defendants*

23      As stated above, it is clearly established that the Eighth Amendment protects against
24 deliberate indifference to a prisoner's serious risk of suicide or serious medical need.  *Conn*, 591
25 F.3d at 1102; *Ortiz*, 884 F.2d at 1314.  However, it is not clearly established that prison officials
26 are required to meet all demands from an inmate making a conditional threat of suicide or harm.
27 Defendants cite to numerous relevant cases from other Circuit and District Courts finding that
28 prison officials have the discretion to reject conditional or insincere suicidal gestures.  (ECF No.

60, pp. 10–11.) While Plaintiff contends that there is a dispute of fact regarding the sincerity of his suicide attempts, the undisputed evidence in the record, supported almost exclusively by Plaintiff's own deposition testimony, confirms that the plaintiff repeatedly stated he would attempt suicide only if he were transferred to administrative segregation. UMF 4. As it is undisputed that Plaintiff's threats of suicide were conditional in nature, and Plaintiff has identified no case law demonstrating that prison medical personnel are required to take certain actions in response to such conditional threats, the Court finds that the Medical Defendants are also entitled to qualified immunity.

## IV. Conclusion and Recommendation

For the reasons explained above, the Court finds that Defendants D.A. Lopez and M. Cuevas are entitled to summary judgment on the grounds of failure to exhaust administrative remedies and qualified immunity, and Defendants Y. Rao, D. Pilar, H. Diaz, T. Loar, and H. Smuzynski are entitled to summary judgment on the grounds of qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment, (ECF No. 60), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 20, 2024**          /s/ *Barbara A. McAuliffe*          
                                       UNITED STATES MAGISTRATE JUDGE